## WASKEY et al. v. McNAUGHT et al.*

### (Circuit Court of Appeals, Ninth Circuit.   July 6, 1908.)

### No. 1,517.

**1. MINES AND MINERALS—INJUNCTIONS—NATURE OF REMEDY—INJUNCTIONS ANCILLARY TO EJECTMENT.**

Code Civ. Proc. Alaska, § 386, provides that when it appears by affidavit that defendant is doing, or threatening to do, or procuring or suffering to be done, some act in violation of plaintiff's rights respecting the subject of the action and tending to render the judgment ineffectual, an injunction may be allowed to restrain such act, etc., and section 1 declares that the distinctions between actions at law and suits in equity are abolished, and that but one form of action for the enforcement or protection of private rights or the redress or prevention of private wrongs is authorized. *Held*, that plaintiffs in ejectment to recover certain mining ground were entitled, under such sections, to an injunction ancillary to such action restraining defendants' mining operations on the ground in controversy pendente lite, on a showing that the ground was chiefly valuable for placer mining, and that defendants' continued mining operations thereon would result in irreparable injury to plaintiffs.

**2. SAME—DAMAGES FOR DETENTION.**

Plaintiffs' claim for damages in ejectment for the unlawful withholding of possession of mining ground claimed by defendants did not affect plaintiffs' right to an injunction to preserve their property from further depletion by defendants' mining operations pendente lite.

**3. SAME—WRIT—SCOPE.**

Where an injunction ancillary to ejectment to recover certain mining ground restrained defendants from rocking and sluicing or in any manner working in or on the premises in controversy, it did not prevent defendants from working dirt, taken from the ground in dispute, and removing to other property.

**4. SAME—REALTY—SEVERANCE.**

Dirt dug and hoisted to the surface and still deposited on the ground in dispute was still a part of the realty and was covered by the terms of the injunction.

**5. SAME—MOTION FOR INJUNCTION—AFFIDAVITS—INSOLVENCY.**

On an application for an injunction pendente lite ancillary to ejectment to recover certain mining ground, to restrain defendants' mining operations, it was not necessary that the affidavits allege that defendants were insolvent; the injury claimed by their continued mining operations being in itself irreparable.

Ross, Circuit Judge, dissenting.

Appeal from the District Court of the United States for the Second Division of the District of Alaska.

The appellees were plaintiffs in the court below in a suit in ejectment. The appellants were the defendants in the suit. The complaint was filed January 4, 1907. Defendants' answer was filed March 14, 1907. Plaintiffs' reply to defendants' answer was filed May 14, 1907. In the complaint it was alleged that the plaintiff was the owner in fee (subject only to the paramount title of the United States) and entitled to the possession, under and by virtue of a valid mining location, of a certain mining claim designated as the Roosevelt placer mining claim, in the Cape Nome recording district of Alaska. The claim was described in the complaint by courses and distances. It appeared from a later part of the record that the portion of the Roosevelt claim entered upon by the defendants was a section of the claim involved in a conflict with the Bon Voyage claim, leased by the defendants from the parties claiming to own the latter claim. The plaintiffs in their complaint further

*Rehearing denied October 26, 1908.

alleged that, at the time of the commencement of the action, the defendants still wrongfully withheld possession of the said tract of land to the damage of the plaintiffs in the sum of $100,000   The prayer of the complaint was that the plaintiffs be adjudged the owners- in fee and entitled to the possession of the premises, and that they have and recover damages in the said sum of $100,000 for the unlawful detention thereof.   Defendants, in their answer, denied the allegations of plaintiffs' complaint, and set up as an affirmative and separate answer, their possession of the ground in controversy under certain leases executed by the owners of the Bon Voyage claim.   The reply of the plaintiffs to defendants' answer denied the averments of the answer and affirmatively alleged an amended location of the Roosevelt claim on June 21, 1905, which included, covered, and appropriated the premises described in the complaint.

While these issues were being formed by the pleadings, the plaintiffs, on May 11, 1907, filed in court their own affidavits, together with a number of other affidavits, in support of a motion for an order on the defendants to show cause why an injunction pendente lite should not issue, restraining them from working or mining the premises in controversy, or from rocking or in any manner extracting gold from the gold-bearing gravel in the dump or dumps situated upon the fractional claim adjoining the Roosevelt claim, which said gold-bearing gravel and dumps of pay gravel it was alleged by plaintiffs had been extracted and removed from the premises in controversy during the winter seasons of 1906 and 1907.   In answer to the order to show cause, the defendants set up by affidavits the facts relating to their claim of right to the possession of the premises ; admitted that they had entered upon the premises in controversy and commenced to work, mine, and operate the same in June, 1906, and had continued to mine and operate the same openly, notoriously, and adversely to all the world and particularly to the plaintiffs; admitted that while operating said claim the defendants had extracted from the premises in dispute, at a depth of about 120 feet below the surface of the earth, a large quantity of gold-bearing earth, sand, and gravel, which defendants had severed from the bed in which said gold-bearing earth, sand, and gravel lay, and hoisted the same through shafts upon said premises and deposited the same on the dump upon said premises, which said dump had always been, since the same was there placed, and then was, within the exclusive control, ownership, and dominion of the defendants, and was claimed by them adversely to the whole world.   On the showing made the order to show cause was issued, and, pending the hearing of the order to show cause, a temporary restraining order was issued, restraining the defendants from doing any of the acts complained of in plaintiffs' motion.   On May 22, 1907, the temporary restraining order was modified so as not to enjoin the defendants from sluicing upon any ground not in dispute in the action.   The order to show cause was heard by the court on May 27, 1907, upon the verified pleadings in the case and upon affidavits on behalf of both the plaintiffs and the defendants, and on June 1, 1907, the court granted the motion for an injunction pendente lite, and ordered the defendants to absolutely desist and refrain from rocking, sluicing, mining, or in any manner working in or upon the premises in controversy.   From this order the defendants have prosecuted the present appeal.

Ira D. Orton and Albert Fink (Campbell, Metson, Drew, Oatman & MacKenzie, and E. H. Ryan, of counsel), for appellants.

Elwood Bruner, J. Allison Bruner, and P. M. Bruner (Edward Lande and John P. Allen, of counsel), for appellees.

Before GILBERT, ROSS, and MORROW, Circuit Judges.

MORROW, Circuit Judge (after stating the facts as above).   The plaintiffs brought this suit in ejectment to recover the possession of a portion of a mining claim which the defendants had entered and ousted the plaintiffs.   The value of the ground in controversy consists in the gold-bearing earth, sand, and gravel contained therein.   The

defendants admit they are severing and extracting this gold-bearing material and depositing it in a dump on the premises. The extraction and removal of this gold-bearing material from the ground will necessarily destroy its value and render ineffectual any judgment that may be obtained in an ejectment suit for the possession of the ground. The plaintiffs, to protect their interests in this respect, have appealed to the remedy by injunction.

It is contended, on behalf of the defendants: (1) That the plaintiffs are limited in their remedy to a judgment in the action of ejectment restoring to them the possession of the premises in controversy, and to damages for their detention; (2) that plaintiffs are not entitled to equitable relief in an ancillary proceeding that would be broader than the relief to which they would ultimately be entitled under the prayer of the complaint; (3) that ore severed from the body of the mine and placed upon the surface loses its character as real property and becomes personalty from the time of its severance; and (4) that equity only interferes by way of injunction to prevent future mischief, and not to remedy that already done. Much of the argument urged in support of the first two propositions is derived from the methods of procedure formerly prevailing in jurisdictions where courts of equity administer equitable remedies and courts of law legal remedies, and where distinctions had been maintained in the administration of legal and equitable remedies. In the present case, the plaintiffs seek a statutory remedy in a jurisdiction where there is but one form of action, and where there is no distinction in the administration of legal and equitable remedies.

In the Alaska Code of Civil Procedure it is provided that an injunction may be allowed by the court or a judge thereof at any time after the commencement of the action and before judgment:

"(1) When it appears by the complaint that the plaintiff is entitled to the relief demanded, and such relief or any part thereof, consists in restraining the commission or continuance of some act, the commission or continuance of which during the litigation would produce injury to the plaintiff; or (2) when it appears by affidavit that the defendant is doing, or threatens or is about to do, or is procuring or suffering to be done, some act in violation of the plaintiff's rights concerning the subject of the action, and tending to render the judgment ineffectual; or (3) when it appears by affidavit that the defendant threatens or is about to remove or dispose of his property, or any part thereof, with intent to delay or defraud his creditors."

It is further provided that, in any such case, "An injunction may be allowed to restrain such act, removal, or disposition." Section 386, Code Civ. Proc. Alaska.

The injunction in this case was issued upon affidavits under the second subdivision of the section as indicated above. The entire section is identical with section 420 of the Oregon Code of Civil Procedure, from which it was taken (B. & C. Ann. Codes & St.); but it has not the same relation to the judicial system of Alaska that the corresponding section has to the judicial system of Oregon. In Alaska, the distinction between actions at law and suits in equity and the forms of all such actions and suits are abolished, and but one form of action for the enforcement or protection of private rights and the redress or prevention of private wrongs is provided. Section 1, Code Civ.

Proc. Alaska. In Oregon, the distinction between forms of actions at law is abolished (section 1, Code Civ. Proc. Or.; B. & C. Ann. Codes); but the distinction between an action at law and a suit in equity is still preserved, and it may be conceded that, had this action been brought in the state of Oregon, no injunction would have issued upon the affidavits in the case, for the reason that it would have been the introduction of an equitable remedy in an action at law, and such a proceeding is unknown under the judicial system of that state.

In Pomeroy's Code Remedies, the author, in section 76, discusses the question how far the abolition of all distinction between actions at law and suits in equity had affected the process of stating causes of action and praying for and obtaining remedies by the plaintiff. The author says:

"Under the former system a legal primary right, when invaded, could only be redressed by an action at law, and a legal judgment alone was possible; while an equitable right must be redressed or protected in an equity suit and by an equitable remedy. A union or combination of the two classes, either wholly or partially, in one action was unknown, unless permitted by some express statute, and was utterly opposed to the theory which separated the two departments of the municipal law."

Then, referring to the system of uniting and combining legal and equitable causes of action in one suit, the author says:

"The new system not only permits but encourages—and in spirit, I believe, requires—such a union and combination, for one of its elementary notions is that all the possible disputes or controversies arising out of, or connected with, the same subject-matter or transaction should be settled in a single judicial action."

In section 495, the author says:

"In a suit to recover possession of land, a separate cause of action may be added to restrain a threatened trespass and commission of waste."

This new system of combining and uniting legal and equitable causes of action had its origin in the state of New York, where it is provided in the Code of Civil Procedure of that state:

"There is only one form of civil action. The distinction between actions at law and suits in equity, and the forms of those actions and suits, have been abolished." Section 3339, Stover's Ann. Code Civ. Proc. N. Y.

This system has since been adopted in a number of the states and territories, including California and the territory of Alaska. In the New York Code of Civil Procedure, section 603 is substantially the same as subdivision 1, and section 604 is substantially the same as subdivisions 2 and 3, of section 386 of the Alaska Code. In other words, the latter section had its origin in the New York Code of Civil Procedure, as did the section providing for a single form of action. There is this further observation to be made concerning these two sections of the New York Code: Section 603 has the title "Injunction, when the right thereto depends upon the nature of the action," and 604 has the title "Injunction, when the right thereto depends upon extrinsic facts." In section 386 of the Alaska Code, these titles have been omitted, but this distinction between subdivision 1 and subdivisions 2 and 3 is plainly implied by the language used.

In New York the only question that appears to have arisen concerning the application of the remedy provided in section 604 has been whether the act which the defendant is doing or threatening to do, or procuring or suffering to be done, and which it is the purpose of the injunction to restrain, is an act "in violation of the plaintiff's rights respecting the subject of the action." In Campbell v. Ernest, 64 Hun, 188, 19 N Y. Supp. 123, the action was upon a judgment. An order was obtained by the plaintiff upon affidavits enjoining defendant from disposing of his property pending the action. The Supreme Court, holding that the plaintiff was not entitled to the injunction, said:

"In no proper or legal sense can a defendant do or permit any act in violation of the plaintiff's rights respecting the subject of the action, in an action on contract ʲor the recovery of money only. The plaintiff in such an action has no rights, as against the property of the defendant, until he obtains a judgment, and until then he has no legal right to interfere with the defendant in the use and sale of the same. It would be a new and dangerous innovation to hold that the plaintiff, upon the commencement of an action on an account against a merchant, could procure an order of the court to restrain him from selling his goods pending the suit, because such sales would diminish the chances for the collection of the judgment when obtained, and yet such is the logical result of the doctrine which would sustain this order."

While this decision does not apply to the facts of the present case, it makes it very clear that the statute is designed to furnish a remedy in just such a case. "The subject of the action" is the mining ground in controversy and the mineral therein contained, and the injunction is for the purpose of preventing the removal of the mineral, which constitutes the value of the mining ground, and which it is the right of the plaintiffs to have preserved. If it be true, as alleged in the complaint in ejectment, that the plaintiffs are the owners of the ground, it would certainly be in violation of their rights "respecting the subject of the action" for the defendants to destroy the estate by removing its value.

The California Code of Civil Procedure was taken largely from the New York Code. It provides in section 307 for one form of civil action, and in section 526 for the remedy by injunction, substantially as in the New York Code. This remedy has been frequently applied to actions at law to prevent the destruction of the substance of the estate pending litigation relating to title, and naturally, in a mining state, we find the law applied to controversies relating to the possession of mining ground

The Natoma Water Co. v. Clarkin, 14 Cal. 544, was an action in ejectment to recover possession of certain premises. The plaintiff, upon filing its complaint, obtained an order upon the defendants to show cause why an injunction should not issue restraining them from the commission of trespass in the nature of waste pending the action. The court said:

"This blending of an action at law, with a petition for ancillary relief to the equity side of the court, is admissible under our system of practice."

In More v. Massini, 32 Cal. 590, the complaint contained two counts. The first was for damages caused by trespass upon land prior to a conveyance thereof to the plaintiff. The plaintiff claimed the dam-

ages by assignment. In the second count, the plaintiff alleged that he was the owner of the lands, that they were in his possession, that the defendants threatened to enter thereon and to quarry and remove asphaltum therefrom, and that they would do so unless restrained. An injunction was prayed for. A demurrer was interposed on the ground that neither count stated a cause of action, and that there was a misjoinder of causes. The lower court sustained the demurrer, and, the plaintiff declining to amend, judgment was entered against him, and he appealed: In the Supreme Court the judgment was reversed, and a new trial granted. In discussing the sufficiency of the second count, the court said:

"The gravamen is a threatened trespass upon land. The trespass is in the nature of waste, and it will be committed unless the defendant is restrained. Should the threat be fulfilled, the plaintiff would be deprived of a part of the substance of his inheritance, which could not be specifically replaced. In the class to which this case belongs, no allegation of insolvency is necessary. The injury is irreparable in itself"—citing Merced Mining Company v. Fremont, 7 Cal. 322, 68 Am. Dec. 262; Hicks v Michael, 15 Cal. 116; Leach v. Day, 27 Cal. 646; People v. Morrill, 26 Cal. 360.

With respect to the objection that there was a misjoinder of causes of action, the court said:

"Trespass upon land is a legal injury; to threaten to enter upon and waste it is an equitable injury; but both may be joined in the same complaint, nevertheless, for the statute reason that they both are 'injuries to property.'"

In Haggin v. Kelly, 136 Cal. 481, 69 Pac. 140, the action was ejectment for the possession of a mining claim. The prayer of the complaint was for an injunction enjoining and restraining defendants during the pendency of the action from mining on said claim, and from taking and removing ore therefrom, and that on the final hearing the injunction be made permanent, and for the restitution of the lands and mining claim. The answer of the defendant placed in issue the ownership of the claim, admitting the earlier right to the title in plaintiffs, but alleging that plaintiffs' title had been lost, first, by forfeiture, and, second, by abandonment. A jury was impaneled to try the issues thus presented, but the court held that the case was in equity, and not in law, and that the jury was impaneled only for the purpose of advising the court upon the issues of fact. The jury found in favor of the plaintiffs, but the court disregarded the findings of the jury, and found in favor of the defendants, and entered judgment accordingly. The Supreme Court held that the action was at law and in the form of ejectment, that the equitable relief of a restraining order against waste during the pendency of the litigation did not change the nature of the action, but was ancillary merely and permissible under the pleadings, citing Natoma Water Co. v. Clarkin, 14 Cal. 544; Curtis v. Sutter, 15 Cal. 259; Hughes v. Dunlap, 91 Cal. 385, 27 Pac. 642. The court held, further, that the added prayer of the complaint, that upon the conclusion of the trial the temporary injunction be made permanent, was unnecessary and superfluous, for, if plaintiffs established their claim, defendants would be ousted, and they would be restored to possession, and there would be no occasion for a permanent injunction. This

case is peculiarly applicable to the questions involved in the present case. It determines that an action at law for the possession of real property may be maintained with the ancillary remedy by injunction to restrain waste, and that the equitable relief of an injunction pending litigation is not in conflict with a judgment in the action of ejectment restoring plaintiff to the possession of the premises in controversy.

In Lindley on Mines, vol. 2, § 872, the law of injunction as an ancillary remedy to an action at law is stated as follows:

"It was formerly the practice in equity, in cases of alleged trespasses on land, not to restrain in the use and enjoyment of the premises by the defendant when the title was in dispute, but to leave the complaining party to his remedy at law. A controversy as to title was deemed sufficient to exclude the jurisdiction of the court. This doctrine has been gradually modified in modern times, and it is now a common practice to grant an injunction in cases where irremediable mischief is being done or threatened, going to the destruction of the substance of the estate, such as the extracting of ores from a mine, or the cutting down of timber, though the title to the premises be in litigation. The authority of the court is exercised in such cases, through its preventive writ, to preserve the property from destruction, pending legal proceedings for the determination of the legal title."

In Tornanses v Melsing, 106 Fed. 775, 45 C. C. A. 615, and Kjellman v. Rogers, 106 Fed. 775, 45 C. C. A. 615, this court referred to the fact that in Kjellman v. Rogers the judge had granted an injunction and appointed a receiver upon an ordinary complaint in ejectment without a single allegation even of equitable nature. The proceedings under review in that case were had in a district court of Alaska, and, upon a proper showing on appeal, had been superseded by a judge of this court; the judge of the Alaska court having refused an appeal. The receiver appointed by the Alaska court had refused to obey the writ of supersedeas, and had been cited to show cause why he should not be punished for contempt. The receiver had been appointed by the Alaska court to take possession of certain valuable mines near Nome, among others, the mine involved in the case of Kjellman v. Rogers. In the latter case, he was required to give a bond in the sum of $5,000. The mine was at the time in the possession of the defendant, and it was shown by affidavits that the mine was yielding $5,000 per day. The order of the court was that the person in possession of the mining claim should deliver to the receiver its immediate possession, control, and management, together with the personal property situated upon the claim, and that the defendant be enjoined from in any manner interfering with the mining or working of the claim by the receiver or with his control and management thereof, and this was done on a complaint that did not even ask for the appointment of a receiver or for an injunction. The injunction was manifestly for the purpose of enabling the receiver to work the mine without molestation, deplete it of its mineral, and destroy its value. These extraordinary proceedings were so clearly in violation of the statute that they were characterized by this court as having no parallel in the jurisprudence of this country, but it was clearly not intended to say that an injunction could not have been issued upon a proper showing and in a reg-

ular way as ancillary to the action of ejectment to preserve the property from destruction. In the course of the opinion in this case, the court said:

"Courts take judicial notice of the general physical and climatic conditions of the country within their jurisdiction. We therefore know judicially, as well as from the record in these cases, that the sole value of the mining claims in question consisted in the mineral contained in them. The extraction of that is therefore the taking of the very substance of the estate, and when all of it is removed nothing of value will remain in the claims."

We conclude from these authorities that the plaintiffs are not limited in their remedy under the Alaska Code to a judgment in the action of ejectment restoring them to the possession of the premises in controversy, but, upon the showing made by the plaintiffs and the admissions of the defendants, the plaintiffs are also entitled, under section 386, to the equitable relief of an injunction pending litigation.

The claim of damages alleged in the complaint for the unlawful withholding of the possession of the claim does not affect the question whether the plaintiffs are entitled to an injunction to preserve the estate from further depletion. It is alleged in plaintiffs' affidavits that the premises in dispute are valuable only for the gold-bearing gravel contained therein, and that the operations of the defendants in mining, working, sluicing, rocking, and extracting gold therefrom is an irreparable injury and damage to the plaintiffs. The essential value of the injunction in this case is to prevent further irreparable damage pending the determination of the legal rights of the parties to this ground. Whether they are entitled to damages for the withholding of possession prior to the injunction being ordered is a question to be determined upon the trial of the case upon the merits.

The contention of the defendants that the ore severed from the body of the mine and placed upon the surface loses its character of real property and becomes personalty from the time of its severance is untenable in this case. It is difficult to determine from the record whether the sand and gravel referred to by counsel as "ore" is still on the ground in dispute, or has been removed to ground described as a fractional claim between the Roosevelt and Golden Bull claims. The affidavits of both plaintiffs is to the effect that it has been so removed. If so, it is not within the terms of the injunction order appealed from, which restrains the defendants from rocking and sluicing or in any manner working in or upon the premises in controversy and particularly set forth in plaintiffs' complaint. The defendant Crabtree, on the other hand, appears to admit in his affidavit that the sand and gravel which has been taken from a lower part of the mine is still on the surface of the ground in dispute. Assuming that the latter statement is correct, we are of opinion that the removal of this sand and gravel from one part of the mine to another is not such a severance from the realty as to make it personalty. The gold contained in the sand and gravel is still to be separated therefrom by rocking and sluicing. It is still a part of the placer mine to be worked like any other part, and it is this work-

ing of the mine that the injunction is intended to restrain pending the litigation as to title.

In Erhardt v. Boaro, 113 U. S. 537, 5 Sup. Ct. 560, 28 L. Ed. 1113, in a suit in equity ancillary to an action for the possession of a mining claim, the court upheld an injunction restraining the defendants from mining on the claim, or extracting ore therefrom, or removing any ore already extracted, until the final determination of the action at law.

In United States v. Parrott, McAllister 271, 27 Fed. Cas. No. 15,998, the court, in ordering an injunction to restrain waste, said:

"The ground on which the court has felt it to be its duty to interpose by injunction in this case is to preserve the premises from waste and destruction, while the title to it is undecided. It has also considered it its duty to enjoin against the removal of the ores which have been already extracted and remain on the premises."

In High on Injunctions, vol. 1, § 731, the rule is stated as follows:

"While the general rule requiring complainant to show a good title extends to trespass against mines, yet it may be relaxed somewhat in a case of irremediable mischief, where the injury goes to the destruction of the very substance of the estate, and in such a case the injunction will not be limited to the prevention of future trespass, but will restrain the removal of ore already extracted from the mine."

It is true, as contended on behalf of the defendants, that the purpose of the injunction in this case was to prevent future mischief, not to remedy that already done. It was intended to preserve the status quo until the title of the property is determined, and this includes the working of the sand and gravel on the surface of the ground, as well as that beneath the surface.

The absence of an allegation in the affidavits filed in support of the motion for injunction charging that the defendants were insolvent is immaterial. The alleged injury is irreparable in itself. More v. Massini, supra; 1 Beach on Injunctions, §§ 35, 40.

The order of the District Court granting an injunction pendente lite is affirmed.

GILBERT, Circuit Judge (concurring). Congress has abolished the distinction between actions at law and suits in equity in Alaska, and has enacted a statute authorizing, pending an action, the provisional remedy of injunction upon certain prescribed conditions. The question here is: What is the proper construction of that statute? It provides for the issuance of an injunction pendente lite in two distinct classes of cases: First, cases where it appears by the complaint that the plaintiff is entitled to such relief; and, second, in any case when it appears by affidavit that a defendant is doing, or threatening to do, certain designated things, which would tend to render the judgment ineffectual. The language of the statute is so plain that discussion of its meaning would seem to be unnecessary. In the second class of cases providing for the remedy during the pendency of the action, there is no mention of the complaint or of any additional or supplemental pleading. The statute does not say that it shall appear from a complaint that the plaintiff is entitled to the temporary relief.

It declares that it shall be granted on affidavits in any action where the specified injury is threatened. The fact should not be lost sight of that the life of the injunction so authorized in the second class of cases is to end with the judgment. It is a provisional remedy only. It is not in a strict sense a preliminary injunction—that is to say, it is not preliminary to a permanent injunction—and the fundamental rule that a permanent injunction must rest upon proper pleading in a bill or complaint has no application. Without such a statutory provision the remedy could not, of course, be accorded in an action at law. But there is nothing anomalous in such legislation. Before any of the codes were adopted in the states, there was in force in New York, under the Revised Statutes of that state, a provision that in an action of ejectment the court might, upon affidavit, enjoin waste by the defendant pending the action. It seems never to have occurred to a court to hold, or to counsel practicing under that statute to suggest, that, in order to avail himself of the protection of the remedy so afforded, the plaintiff must insert in the declaration in ejectment any averment other than those required by the rule of common-law pleading. The temporary injunction was obtained upon a declaration and upon an affidavit setting forth the facts to show the propriety of the restraining order. Bush v. Phillips, 3 Wend. (N. Y.) 428; People v. Alberty, 11 Wend. (N. Y.) 161. A similar practice has obtained in some of the states where, under a Code system, provision has been made for the issuance of a temporary injunction in actions at law. Thus, in Riemer v. Johnke, 37 Wis. 258, it was held that a plaintiff in ejectment may be entitled, as a provisional remedy, to an order restraining trespass or waste during the pendency of the action. In College Corner et al. v. Moss et al., 77 Ind. 139, which was an action at law, the court said:

"The statute makes no provision for a temporary injunction when no cause therefor is shown in the complaint, except where the defendant threatens or is about to remove or dispose of his property. In such case it seems that where the facts are presented by affidavit, after the action has been commenced, an injunction may be issued to prevent the threatened injury."

I am unable to see how the decisions in McHenry v. Jewett, 90 N. Y. 58, Heine v. Rohner (Sup.) 51 N. Y. Supp. 427, and Goldman v. Corn (Sup.) 97 N. Y. Supp. 926, have any relation to the question presented in this case. They are all cases arising under and controlled by section 603 of the Code of Civil Procedure of New York. They were all equitable suits; two of them being suits to obtain permanent injunction, and the other a suit for a decree of specific performance. Section 603 provides:

"Where it appears from the complaint that the plaintiff demands and is entitled to a judgment against the defendant restraining the commission or continuance of an act, the commission or continuance of which during the pendency of the action would produce injury to the plaintiff, an injunction order may be granted to restrain. The case provided for in this section is described in this act as a case where the right to an injunction depends upon the nature of the action."

The decisions in those cases had no bearing whatever upon section 604, which makes provision, as does the second clause of the

Alaskan statute, for a temporary injunction upon affidavits showing that the defendant threatens or is about to procure or suffer to be done an act during the pendency of the action "in violation of the plaintiff's right respecting the subject of the action and intending to render the judgment ineffectual."

It seems to me, from a consideration of the statutes and the decisions that under the provision of the Alaskan Code, it is unnecessary, and in fact it would be improper pleading, to insert in the complaint, in a case which is in its nature an action at law, the particular facts on which the plaintiff predicates his application for a temporary injunction, or even a prayer for such relief; but if, indeed, it should be held otherwise, I am of the opinion that the court below committed no error in granting the injunction, for a sufficient basis for it was set forth in the affidavit of one of the plaintiffs in the court below. It was an affidavit containing the title of the court and the cause, and it alleged all of the facts necessary to show that the plaintiffs were entitled to injunction pending the action. It further alleged that the plaintiffs had no plain, speedy, or adequate remedy at law, and it prayed that an injunction be issued restraining and enjoining the defendants, and each of them, their servants, etc., from mining or sluicing within the described premises. In Morgan v. Quackenbush, 22 Barb. (N. Y.) 72, it was held that, under the rule of chancery practice that an injunction can only be granted when it appears by the complaint that the plaintiff is entitled to the relief demanded, an injunction pendente lite might be granted in the absence of such averment in a complaint, upon an affidavit which contained all the requisites of a complaint. Of the affidavit in that case, the court said:

"It contains the title of the cause. It specifies the name of the court and the county where the plaintiff proposes to try the action, and the names of the parties. It then states the facts upon which the plaintiff relies to constitute his cause of action, and demands the relief to which the plaintiff supposes himself entitled. This makes a complaint. * * * If a paper contains, as this does, everything essential to constitute a complaint, the form in which it is presented furnishes no sufficient ground of objection."

ROSS, Circuit Judge, dissenting.