[Civil No. 1226.   Filed July 9, 1914.]

[141 Pac. 847.]

ALBERT STEINFELD, Appellant, v. OMEGA COPPER COMPANY, a Corporation, Appellee.

1. MINES AND MINERALS—CONVEYANCES—PROPERTY CONVEYED—APPURTENANCES.—If ore on the dump was a part of real estate, it passed under a deed of the real estate regardless of the grantor's mental reservation thereof.

2. MINES AND MINERALS—CONVEYANCES—CONSTRUCTION.—To determine whether ore severed from mines and placed on the dump nearby is realty and a part of the mines, or personalty, the intention with which it was extracted and the purpose and intention of the owner in placing it on the dump is controlling.

3. MINES AND MINERALS—CONVEYANCES—EVIDENCE.—In an action by a grantor of mining property against his grantee to recover for the conversion of ore on the dump near the mines, on the theory that it was personalty and did not pass with the mines, evidence *held*

to support a finding that the owner's purpose and intention in extracting the ore and placing it on the dump was not to sever it from the realty, but to remove a part of the realty under ground to the surface.

4. PARTNERSHIP — FIRM PROPERTY — ADVERSE POSSESSION. — A partner cannot initiate title by adverse possession as against his partner until and unless he makes adverse claim of title under such circumstances as will charge the partner with notice of the adverse claim.

APPEAL from a judgment of the District Court of the First Judicial District of the Territory of Arizona, in and for the County of Pima.  Edward Kent, Judge.  Affirmed.

The facts are stated in the opinion.

Eugene S. Ives and Gerald Jones, for Appellant.

Frank H. Hereford, for Appellee.

CUNNINGHAM, J.—This action was commenced by the appellant to recover $20,000 damages for the conversion of 2,000 tons of ore alleged to have been the property of the plaintiff.  It is alleged that the ore had been mined and severed from certain mines, and was placed upon the surface of the ground adjacent to and in the workings in and upon the mines described, known as the Omega group of mines. The defendant answered, denying generally the allegations of the complaint except the first paragraph, setting forth defendant's corporate character, and answered specially, setting up matters in the way of estoppel upon the grounds: That prior to March 14, 1904, plaintiff held in his name in trust the Omega group of mines for and as the property of the firm of L. Zeckendorf & Co.  That plaintiff was a member of such firm.  That the other member, L. Zeckendorf, brought suit against plaintiff to dissolve the firm, and on said March 14, 1904, receivers were appointed to take and hold all the property of the firm, and the receivers took possession of such property.  That pursuant to an order of the court the plaintiff conveyed to the receivers the Omega group of mines and all the metals, all gold and silver bearing quartz, rock and earth therein.  The receiver conveyed to plaintiff, Albert Steinfeld, by bill of sale certain personal property of the said firm.  That public sale was made of the Omega group of

mines, and Louis Zeckendorf bid for and became the purchaser of the property, and plaintiff was then present and made no claim that any of the ores in or on said mine should not be included in said sale. That immediately upon the making of said sale of the said Omega group of mines and the ores, including all the ores referred to and described in the complaint, Louis Zeckendorf took possession of the property and retained possession thereof until April 25, 1906, when on that date he sold and conveyed the title and transferred the possession thereof to the defendant, Omega Copper Company, which defendant retains possession of the property, including the ores in question, claiming it and said ores as its own. That the plaintiff never at any time until the institution of this suit claimed that the ores referred to in the complaint were not part and parcel of, or appurtenant to, the said Omega group of mines, or the title to the said ores separate and apart from the said Omega group of mines. The cause was tried before a jury, and a verdict for the defendant resulted. Judgment was entered thereon, and a new trial was refused. From the judgment and order refusing a new trial, plaintiff appeals.

The plaintiff relies upon adverse possession of the ore on the dump for two years for his title thereto. In so doing, he necessarily contends that the ore on the dump is personal property, otherwise his deed to the receivers of L. Zeckendorf and Company under date of May 5, 1904, would necessarily carry the title to the ore in question and work an estoppel to claim adversely to the deed. The defendant controverts the claim of plaintiff as to the character of the property, and contends that the ore on the dump is real estate, and its title passed by the deed conveying the mines. If defendant succeeded in maintaining this contention, clearly plaintiff failed to establish his title as pleaded. Plaintiff makes no pretense that he severed the ore from the dump while the mine was in his possession. The evidence is conclusive, or at least not controverted, to the effect that plaintiff did nothing in the way of changing the relation of the ore to the mines. The plaintiff testified that:

"The claim of L. Zeckendorf & Co. to be the owners of the ores on the dumps and in the mines was continuous from the Rose contract (made about 15 years prior to the date when

plaintiff was testifying) up to the time of the suit to dissolve the copartnership, and was open and notorious.'' ''I think that the ore I saw when I first went out there in 1884 is the same ore that I saw when I went out there on a later trip.'' ''I first claimed that L. Zeckendorf & Co. owned this ore on the Omega mine immediately after the sheriff's sale. I claimed it as coming to Zeckendorf & Co. through the sheriff's proceedings, whatever they were. . . . That is the claim I made as I remember. I think I have made other claims to it, except that the property came to me through the sheriff's deed and through the Portugal deed. I claimed by reason of possession. We immediately took possession of it, immediately after these proceedings, and were in possession of it up to the time it was sold by the receivers. I think that is a different title than the one I got from the sheriff.''

The witness positively asserted that the ore was claimed by him for L. Zeckendorf & Co. by reason of the sheriff's deed. The sheriff put him in possession of the property at the time the deed was delivered. Witness does not remember whether he made any direct claim to the firm of L. Zeckendorf & Co., to Louis Zeckendorf, or the defendant, Omega Copper Company, as to the ownership of the ores until this suit was filed. From this evidence plaintiff's claim of title by adverse possession arose, if at all, after the conveyance of Steinfeld and Zeckendorf to the receivers of L. Zeckendorf & Co. Up to that date, May 5, 1904, the possession of the ore on the dump had passed at each transfer with the mines. Plaintiff so received the possession of the ores for L. Zeckendorf & Co., and for that firm held the possession until the members of the firm were ordered by the court to, and they did, convey to the receivers ''all the real estate and mines or mining claims owned by said firm, or by either member as the property of the firm.''

From the plaintiff's evidence, as testified by plaintiff, when he made the conveyance to the receivers of L. Zeckendorf & Co., he did not intend to convey the ores on the dumps with the mines. He made no reservation in the deed of such ores, but the reservation was in his mind, a mental reservation. If it is conceded that a grantor may effectively reserve rights in property by such mental reservation alone, and such reserved property does not pass by his deed, then plaintiff con-

tinued to hold the title to the ore on the dump for L. Zeckendorf & Co. and as its trustee. He has failed to show that the trust under which he held was repudiated by him at any time, until this suit was commenced, so that the statute of limitations would commence to run in his favor. Regardless of a grantor's mental reservations, if the ore on the dump was a part and parcel of the realty, the mines, the title to such ore passed to the receivers of L. Zeckendorf & Co., and thereafter by deed to the defendant as a matter of law. The vital fact to be determined is whether the ore was so annexed to the realty and remained so annexed thereto as to become a part and parcel thereof. If so, it passed with the conveyance of the mines. The intention with which the owner of the property extracted the ore from the ground and the purpose and intention of the owner with which it was placed on the dump is controlling in arriving at a solution of the question of whether the ore after having been extracted and placed in the dump was personalty or realty.

Only one witness testified relative to these matters. This witness was Fred G. Hughes. The "Old" Omega Copper Company owned the mines, and Hughes was its superintendent. Under Hughes' supervision the ore was extracted. He testified:

"At the time I took that ore out we had no intention of doing anything with it. . . . There was simply—naturally in working a mine, you have got to get rid of your waste or ores that you are using, and it was just put out on the dump to give us a chance to develop and get out better ore to send to the smelter. In other words, I moved it out there to get a chance to get out our better ore to send to the smelter. At the time we took that ore out and put it on the dump, it at that time had no value."

This evidence is of such a substantial nature that a jury would be justified in drawing the natural inference therefrom that the owner's purpose and intention in extracting the ore from the ground and placing it on the dump was not to sever the ore from the realty, but to remove a part of the realty from the workings underground to the surface, then such removal had no effect to change the character of the ore moved. It remains realty. No one has ever contended that because the owner of realty removes a portion of earth from one part

of the premises to another that such portion removed necessarily becomes personal property by reason of the fact of removal.

The question of the character of the ore on the dump was fairly submitted to the jury for determination in this case. The verdict of the jury was returned for the defendant.  The verdict is supported by the evidence upon the theory that the ore on the dump is a part and parcel of the mines.  On this theory the verdict is responsive to the issues made and tried. Upon such theory no error appears from the record, and no error is assigned by appellant.  The error assigned has reference solely to an issue in its nature collateral to the vital issue of the use, and depends solely upon the jury finding in their deliberations that the ore on the dump in question was not realty, but was personalty.  Then the question would arise for determination, notwithstanding the ore was personal property, whether the ore as personal property passed by the conveyance of the mines by reason of a well-recognized and prevailing custom among mining men.  Upon this theory of the case the errors are alleged to have been committed.  In the first place there is no evidence in the record that would justify the jury in finding that the ore was personal property.  The plaintiff makes it clear that he secretly intended it should be so considered while the property belonged to L. Zeckendorf & Co., but that is not evidence of the fact that it is personal property.  This amounted only to a conclusion.  Before real property can become personal property something more is required to be done toward its severance than the operation of the mind unexpressed to others.  Such was the only severance here contended for.  Plaintiff failed wholly to support his title to the property.  He failed to produce legal evidence supporting the alleged personal property character of the ores on the dump.  He also failed to produce evidence supporting his alleged claim of title by adverse possession, and the evidence produced tends to show that at no time did he assert title adverse to the title of L. Zeckendorf & Co., but the evidence tends to show that he held title in subordination to the title of L. Zeckendorf & Co. up to the date of the conveyance to the receivers of that firm.  When plaintiff began to assert title adverse to the title of the receivers is not shown.  If the receivers did not take title to the ore on the dumps by reason

of the personal character of the property, then plaintiff and Louis Zeckendorf continued to own the property as partners, because he did not claim title by the bill of sale from the receivers to plaintiff, and such bill of sale fails to describe the ore on the dump on the mines as any part of the personal property sold and transferred to plaintiff, and no other disposition of the personal property belonging to that partnership is shown to have been made by the court in that suit. Plaintiff could not have initiated a title by possession as against his partner until and unless he made adverse claim of title under such circumstances as would have charged Louis Zeckendorf with notice of the adverse claim. The jury would not be justified in drawing the inference that plaintiff asserted an adverse claim to the property under circumstances charging Louis Zeckendorf with notice of such adverse claim because no evidence of that fact was before the jury. On the other hand, plaintiff admits in his testimony that he has never asserted such claim to either Zeckendorf or to defendant, Omega Copper Company, prior to the commencement of this action.

Under this state of the proof, conceding that the ore on the dump was personal property, plaintiff could not recover, because he has failed to establish the title pleaded by him. Such being the case, the question of the existence of a custom for the ore on the dump to follow the conveyance of the mines becomes wholly immaterial to a disposition of the case by the jury. The argument of the law applicable to custom under the circumstances disclosed by this record becomes an abstract question, having no application to the disposition of the case, and requires no further discussion here.

We find no reversible error in the record. The judgment is affirmed.

FRANKLIN, C. J., and ROSS, J., concur.