[No. 4186.]

## CENTRAL LOCOMOTIVE AND CAR WORKS V. SMITH ET AL.

1. RAILROADS—*Equipment Contract.* Petitioners applied for an order requiring the receivers of a railroad to deliver into their possession two locomotives, sold to the railway company by petitioner's assignor, by contract under secs. 5523-5525 of the Revised Statutes, the title being retained until full payment of the purchase price. The contract complied in all things with the requirements of the statute. The price was $18,100.00, of which $500.00 remained unpaid. All this was admitted by the answer. It did not appear that any labor bills were overdue; that there was any other creditor whose claim was upon an equal footing with that of petitioner's; that the locomotives were necessary to the maintenance of the road, or that, to surrender them, would in any way embarrass the receivers. *Held* that the petitioners were entitled as of right to the order; an order of the District Court denying petitioners' motion for judgment on the pleadings was reversed, and that court directed to enter judgment requiring the receivers to pay the balance due under the contract, or surrender the locomotives. (452, 453.)

2. WRIT OF ERROR—*Where the Writ Lies—Final Judgment.* Petition for an order requiring the receivers of a railroad to surrender certain locomotives sold to the railroad company by a conditional contract under Rev. Stat., secs. 5523-5525, the title being retained until full payment of the purchase price. No cause against the petition was shown by the answer. *Held* that an order denying the petition had the effect of a final judgment disposing of the rights of the petitioner and that error lay to review it. (456, 457.)

*Error to Denver District Court.* HON. GEORGE W. ALLEN, Judge.

Mr. M. K. EDWARDS, Mr. B. B. LASKA, for plaintiff in error.

Mr. GEORGE L. NYE, Mr. W. W. GARWOOD and Mr. HARRY C. RIDDLE, for defendants in error.

Opinion by CUNNINGHAM, P. J.

In June, 1912, defendants in error, Smith and the Trust Company, were appointed by the Denver District Court receivers of the Denver, Laramie & Northwestern Railroad Company. On August 30th of the same year plaintiff in error filed its petition in said receivership proceedings, wherein it is alleged that the assignor of plaintiff in error, the Hicks Locomotive & Car Works Company, delivered to the railroad company in 1910, two locomotives, said locomotives being delivered under an instrument designated "a car trust indenture," which indenture, or agreement, was duly executed and recorded pursuant to the provisions of sections 5523, 5524 and 5525 R. S. 1908; sections 6172, 6173 and 6174 M. A. S. (1912).

The railroad company, as a part of the aforesaid transaction, executed and delivered to plaintiff in error's assignor, notes aggregating an amount equal to the purchase price of said locomotives, to-wit, $13,600, less some $4,500 paid in cash. At the time of the appointment of the receivers the railroad company had paid all but $500, which was represented by a note long past due. The agreement between the plaintiff's assignor and the railroad company provided, among other things, that the title in the locomotives should not vest in the railroad company, but should remain in the vendor, plaintiff's assignor, until the full sum provided by the contract had been paid by the railroad company, and further, that in the event of default by the railroad company to fully carry out the provisions of the agreement, the vendor, plaintiff's assignor, "may resume possession of said

locomotives, and the contents thereof  *  *  *  and may thereafter sell the same at public or private sale," under conditions with reference to the selling and the disposition of the proceeds not necessary to be here set forth.

In its petition plaintiff prayed that an order might be entered directing the receivers to forthwith turn over to it the said locomotives. The receivers answered the petition of plaintiff in error, admitting all the allegations thereof, "but denying the legal effect alleged and claimed for said facts," (referring to the facts set up in the petition or complaint), and alleging further that "owing to certain facts and conditions, and certain matters of litigation and controversy, not absolutely within the control of said receivers, they have been unable to either confirm and carry out the contract between the Denver, Laramie & Northwestern Railroad Company, and the Hicks Locomotive & Car Works, a corporation, predecessor in interest to the said Locomotive & Car Works, alleged, set forth and attached to said petition, or, whether they would repudiate and disaffirm said contract."

We take it from the quotation last made from the answer of the receivers that they mean to allege that they have, for the reasons therein stated, been unable to determine whether they would affirm the contract of conditional purchase made between the railroad company, and the assignor of plaintiff in error, or whether they would repudiate the same. In the first place it will be observed that the allegation of the answer, above quoted, is couched in the most guarded and indefinite language possible. The nature of the "certain facts and conditions, and certain matters of litigation and controversy" which were "not absolutely within the control of said receivers" is not disclosed, nor is it stated why the receivers had been unable to determine whether they would confirm or repudiate the contract. It is not alleged that they were not possessed of sufficient

funds. So far as this allegation goes their uncertain situation was due entirely to a mental attitude.

On the coming in of this answer plaintiff in error filed a motion for judgment on the pleadings. This motion was denied, and upon this order of denial the case is brought here by plaintiff in error for review. No contention is made in the briefs, or on the oral argument, that the order of the court denying the motion for judgment upon the pleadings was not a final determination of the petitioner's rights, or that it was not a judgment or order to which a writ of error would lie.

In their briefs and on oral argument the chief contention of the receivers and the Bankers' Trust Company, (the latter representing certain bond-holders), seemed to be that because of the *quasi* public character of the railroad company, plaintiff was not entitled to a summary order for possession of the locomotives, even though its title and the allegations of its petition were confessed; that the court having charge of receivership proceedings had authority, within certain bounds, to postpone plaintiff's remedy in the interest of the public, and other creditors of the railroad company.

This contention appears to find support in the opinion rendered in *Frank v. Denver & Rio Grande Ry. Co.,* (C.C.) 26 Fed. 123. In that case Judge Hallett held that the payment of a claim of a creditor, situated somewhat similar to the plaintiff in error, ought to be postponed or deferred, as to the principal sum, until other defendants "on an equal footing, if not in advance, of the rolling stock contracts, should be satisfied." The peculiar facts in the *Frank* case made this ruling of Judge Hallett's highly equitable. In that case it appears that the creditors to whom Judge Hallett referred as being "on an equal footing, if not in advance of the rolling stock contracts," were laborers who "wrought and gave of their substance under promise of prompt payment from the railroad company." Moreover,

the record in the *Frank* case "disclosed that payments made by the receivers under these contracts (with the rolling stock people), have so absorbed the earnings of the road that the orders of the court relating to labor and supply demands · remain in large part unexecuted." Judge Hallett in the *Frank* case, nevertheless, ordered that the interest on the claim of the rolling stock people should be paid from the income of the road.

There is no allegation in the answer in this case to bring it within the ruling laid down by Judge Hallett. The record shows that the receivers have paid no interest, and nothing upon the principal of plaintiff's claim, though the same was long past due, and was in default when they took possession of the road. There is no allegation that there were overdue labor bills, or that there was any other claim against the estate which was on an equal footing with plaintiff's claim. And, further, we find no allegation in the answer from which even an inference can be drawn that the locomotives were necessary to the maintenance of the road, or that turning them over to the possession of the plaintiff would, in any wise, embarass the receivers.

While it is true that the appointment of a receiver frequently leads to a conflict of rights as to the possession of property, and while it is true that the court having jurisdiction of the estate will not permit third parties to interfere with the receivers' possession without its consent, still the courts never unecessarily interfere with the rights of third persons to repossess themselves of their own property. Indeed, unless it is made affirmatively and clearly to appear that for some reason recognized by the rules of equity, the rights of third persons ought to be postponed, it is the duty of the court having jurisdiction of the estate to facilitate · their efforts to enforce such rights. (This is the plain duty of the court even where the rule is not·changed or affected by statute.)

Our statute provides that "Every such contract, specified in sections 1 and 2 (and the contract here under consideration was such a contract), shall be good, valid and effectual, both in law and *equity*, against all purchasers and *creditors*," sec. 6174 M. A. S. (italics ours), on condition, of course, that the contract has been acknowledged, recorded, and the locomotives properly marked, etc., all of which provisions, it is admitted, plaintiff in error had strictly complied with.

The opinion in *Frank v. Denver & R. G. Ry. Co., supra,* was handed down in February, 1885. The statute from which we have quoted became effective in 1905, and the previous statute of 1885 did not go into effect until a month after the opinion in the *Frank* case was rendered. The contract or agreement involved in the *Frank* case was entered into in 1878, hence it will be seen that there was then no statute making such contracts "good, valid and effectual * * * against all purchasers and creditors."

To hold that plaintiff's right in this case to repossess itself of the locomotives in question, under the circumstances here disclosed, must be deferred or postponed to the rights of other creditors would be to nullify the statute upon which plaintiff relied, and upon which it had a right to rely, when it entered into the agreement with the railroad company. Indeed, by a well known rule of construction the sections of our statute referred to must be held to have been written into and to have become a part of the agreement or contract which we are considering. But, the statute aside, the conclusion that we have reached in this case is not believed to be in conflict with any authorities cited by defendants here.

In *U. S. Trust Co. v. Wabash West. Ry. Co.,* 150 U. S., 300, 37 L. Ed., 1085, 14 Sup. Ct., 90, it is said:

"The court did not bind itself or its receivers (to pay the agreed rental of a leased line), *eo instanti* by the mere act of taking possession. Reasonable time necessarily had

to be taken to ascertain the situation of affairs."

In other cases cited by defendants in error a similar ruling is announced. In some of these cases the attempt was being made to hold the receivers to a hard and fast contract possessing no alternative feature.

In this case, as will later be seen, plaintiff seeks to do nothing more than to require the defendants to make an election between paying the small balance due and surrendering the two locomotives.

It ought not to require much time for defendants to elect between paying a balance of $500 on a $13,600 contract and delivering two locomotives, for which the railroad company had obligated itself to pay the latter sum. Especially would this appear to be true if these locomotives were indispensable to the operation of the railroad system. Defendants had had from June 13th, 1912, (the day of their appointment), to August 30th (the date of demand made upon them by plaintiff for possession), in which to determine whether they would affirm the contract, and pay the balance due, or turn back the machinery. If this were not ample time in which to decide so trivial a matter, the receivers should have been able to settle it when they filed their answer on December 11th, more than three months later. The motion for judgment on the pleadings was not filed until January 31st, 1914, and was not heard until March 12th, 1914, one year and nine months after plaintiff in error had filed its petition demanding possession. We feel, therefore, justified in saying that if there existed any peculiar circumstances or facts making an election on the part of defendant in error, after so long a time, impossible or unreasonable, they should have disclosed same in their original answer.

On the oral argument counsel for the plaintiff in error repeatedly asserted that his client had no desire to take any advantage of the defendants, and desired nothing further than that the amount of money yet due on its contract,

together with the stipulated expense of enforcing its legal and equitable rights, should be paid.

The judgment of the trial court will, therefore, be reversed, with directions that the motion of plaintiff for judgment on the pleadings be granted, and that a judgment be entered on such motion in favor of plaintiff in error, requiring the receivers to forthwith surrender possession of the locomotives, or pay, within thirty days from the date of entering judgment, the balance due plaintiff in error under the terms of the contract sued upon.

*Reversed with directions.*

On Petition for Rehearing.

In the opinion handed down, we stated the fact that no contention was made by defendants in error, in the briefs or on oral argument, that the order of the court, to review which the writ of error was sued out, was not a judgment or order to which a writ of error would lie. The petition for rehearing is based solely upon the assertion that the order denying judgment in favor of plaintiff on the pleadings was an interlocutory order, and not subject to review by this court, for which reason it urged that this court is without jurisdiction to hear and determine the issues. That question having been for the first time raised on petition for rehearing, we should decline to consider it were it not jurisdictional. Section 6, chapter 6, Laws 1911, provides that "Writs of error shall lie from the supreme court to every final judgment, decree or order, of the district court." Strictly speaking, the order under consideration was not in form a final judgment, and did not in a formal manner finally dispose of the issues; but, from an examination of the pleadings, it appears that no issue was made upon any question of fact, the only question for determination being one of law, namely, as to whether, under the admitted

facts, The Central Locomotive & Power Works was the owner and entitled to possession of the locomotives, as claimed by it, or merely a lien holder, as asserted by the defendants in error. Upon that question we have ruled that the judgment should have been in favor of plaintiff in error. There is nothing left for the trial court to determine. We think that the order of the court denying the motion for judgment on the pleadings, predicated as it must have been upon a determination adverse to plaintiff in error as to its ownership and right to possession of the property, had the force and effect of a final judgment or order disposing of the rights of petitioner. Indeed, the defendant in error so treated it at all times, until presenting this petition for rehearing. The court should regard the substance and effect of the order, rather than its form, and so considered, it is subject to review by writ of error.

The petition for rehearing is denied.