Bruce E. SMITH, Plaintiff-Appellee,

v.

EL PASO GOLD MINES, INC.,
Defendant-Appellant.

No. 83CA1475.

Colorado Court of Appeals,
Div. II.

Dec. 26, 1985.

Rehearing Denied Jan. 23, 1986.

Certiorari Denied June 2, 1986.

Ranson, Thomas, Cook & Livingston, Richard P. Ranson, Ann P. Pitinga, Colorado Springs, for plaintiff-appellee.

Spurgeon, Haney & Howbert, P.C., Gregory R. Piche, Colorado Springs, for defendant-appellant.

STERNBERG, Judge.

Defendant, El Paso Gold Mines, Inc., appeals from an order of the district court voiding its redemption of dump rock located on its gold mining claim. We reverse.

Plaintiff, Bruce E. Smith, was a judgment creditor of defendant. In August 1981, pursuant to a writ of execution, defendant's real property was sold at auction and, later, redeemed by defendant. In March 1983, the judgment not having been totally satisfied, and no certificate of levy having been recorded, plaintiff again sought execution. This time the sheriff was instructed to levy on dump rock located on defendant's property. Defendant

sought to enjoin this sale on the basis that the lien was extinguished by the first sale, but the injunction was denied by a court order dated May 4, 1983. In this order, the trial court included a finding that the dump rock was personal property. Defendant did not appeal from this ruling.

Plaintiff proceeded to execute upon the dump rock using real property documents and procedures. In June 1984, the ore was sold to plaintiff at a sheriff's sale. In July, defendant redeemed. Plaintiff thereupon successfully sought to void the redemption, arguing, *inter alia,* that the dump rock was personal property not subject to redemption.

Defendant's principal argument on appeal is that the redemption was valid because the dump rock was real property. Plaintiff contends that we may not consider this issue because the original ruling that the rock was personal property was made in May of 1983, but no notice of appeal was filed in the case until December of that year. We conclude that review of this issue is properly before us and that, because the dump rock is real property, the trial court erred in voiding defendant's redemption thereof.

## I.

■ Defendant's motion seeking an injunction against the second sale of the real property was based on the theory that, pursuant to § 38–39–105, C.R.S., the judgment lien against that property was extinguished by the August 1981 sale. The May 4, 1983, denial of the injunction was based on the trial court's conclusion that § 38–39–105 did not apply to prevent a second sale. Thus, the trial court's finding that the dump rock was personalty was mere dictum, unnecessary to resolution of the issue before it and collateral to the substance and effect of the order. *See Humphrey's Executor v. United States,* 295 U.S. 602, 55 S.Ct. 869, 79 L.Ed. 1611 (1935); 21 C.J.S. *Courts* § 190 (1940). *See also Hardy v. Carrington,* 87 Colo. 461, 288 P. 620 (1930) (decision of point not necessary to determination of a controversy should be avoided); *Central Locomotive & Car Works v. Smith,* 27 Colo.App. 449, 150 P. 241 (1915) (in assessing jurisdiction, court should consider substance and effect of an order).

However, when the court later granted plaintiff's motion seeking to void defendant's redemption on the ground that the dump rock was personal property not subject to redemption, the issue was adjudicated and was ripe for appeal at that time. Defendant proceeded in timely fashion to perfect its appeal following this order; therefore, we may review it.

## II.

It is axiomatic that ownership of land includes underlying soil or earth and that, while in place, minerals are real property. Because the unique value of minerals arises only after they are extracted and processed to become commercial objects, it has been held that at some point after they are severed from the land, minerals lose their character as realty and "become" personalty. *See generally* 2 R. Tiffany, *Law of Real Property* § 587 (3d ed. 1939); 58 C.J.S. *Mines & Minerals* § 133 (1948). The possibility of this change of character is assumed in the unique form of mining leases, which go beyond conveyance of possession of realty to grant the right to remove ore and reduce it to ownership; title to minerals and earth not yet removed. remains in the lessor. *See London Extension Mining Co. v. Ellis,* 134 F.2d 405 (10th Cir.1943). The same is generally true of a *profit a prendre* or a license, except that use, not possession, is granted. *See* 2 R. Tiffany, *supra,* §§ 829–47.

■ In determining what acts are sufficient to work the transformation from realty to personalty, courts have considered, *inter alia,* whether the property was taxed as realty or personalty and whether it was leased or sold outright. That the purpose of a mining operation is to obtain a profit from the value of ore does not necessarily make the ore personalty. *See State v. Superior Court,* 208 Cal. App.2d 659, 25 Cal.Rptr. 363 (1962). The

dominant factors in this inquiry, however, are the physical nature of the materials specifically in question, the relationship between the parties in litigation, and their intent regarding ultimate disposition of the property.

Thus, crude oil when reduced to possession is personalty, *see Greenshields v. Warren Petroleum Corp.*, 248 F.2d 61 (10th Cir.), *cert. denied*, 355 U.S. 907, 78 S.Ct. 334, 2 L.Ed.2d 262 (1957), as are sand and gravel removed from a pit on leased land and stockpiled there, on fenced-off premises, awaiting transport to a crushing operation and eventual sale, *Shirley v. National Applicators of Cal, Inc.*, 115 Ariz. 521, 566 P.2d 322 (1977), and top soil purchased to be stripped from underlying earth and removed for use elsewhere. *Palumbo v. Harry M. Quinn, Inc.*, 323 Ill. App. 404, 55 N.E.2d 825 (1944). *See also Pettigrew v. W & H Development Co.*, 122 So.2d 813 (Fla.App.1960) ("[E]arth, sand or gravel ... where it has been severed from the soil, gathered up and secured for use elsewhere ... becomes personalty.").

Mineral-bearing ore, however, removed from the earth and dumped on the surface, occupies an intermediate status. Usually, the ore must still be extensively worked—transported to a mill and reduced—to yield its valuable mineral component. For this reason, ore dumps are often the subject of mining leases. The implication here is that only so much of the ore as is removed and processed becomes personalty. Therefore, such ore is most logically regarded as realty appurtenant to the land on which it is dumped, *see Waskey v. McNaught*, 163 Fed. 929 (9th Cir.1908); *Steinfeld v. Omega Copper Co.*, 16 Ariz. 230, 141 P. 847 (1914); E. DeSoto & A. Morrison, *Mining Rights on the Public Domain* 245–46 (16th Ed.1936), unless the miner and the owner of the land agree otherwise. *See London Extension Mining Co. v. Ellis, supra; Manson v. Dayton*, 153 Fed. 258 (8th Cir. 1907).

The posture of this case is unique in that here there is no question of *inter partes* acts which might have affected the property nature of the dump rock. The primary issue before the trial court was the character of the rock for purposes of applying the statutes governing execution of judgments at the time execution was sought. The trial court received the following evidence: that the dump was taxed as real property; that it was viewed as a revenue producing asset in the past; that the board of directors of the defendant corporation had discussed selling the rock or constructing leaching facilities to be operated by defendant, but that the only written agreements in regard to it involved mining leases; that these leases gave defendant royalty rights connected with sales of ore made by its lessees; that defendant received such royalties; that an oral agreement existed whereby one lessee's agent was to broker certain dump rock, compromising disagreement over whether its lease included rights in that rock; that in an independent ownership dispute defendant claimed that this and certain other dump rock was personal property as between it and the party on whose property the rock may have been dumped; and, that an agreement existed allowing a trucker to remove ore for his own purposes.

Based on the cases and authority discussed above, we conclude that this evidence is insufficient as a matter of law to establish the intent of defendant to treat the rock as personalty. It is not enough that defendant regarded the ore as an asset which would produce income upon sale; the question remains whether that asset was realty or personalty. At most, the evidence establishes only that some of the rock, after removal by various lessees, became personalty as to them, that the rock dumped on the adjacent claim might somehow have become defendant's personalty and that the trucker had been granted a right of removal in the nature of a *profit a prendre* or license. We hold that, as a matter of law, the dump rock remaining on defendant's property was realty.

Accordingly, the order is reversed with directions to the trial court to reinstate defendant's redemption of its property.

VAN CISE and METZGER, JJ., concur.