Charosa Olga KERR, Plaintiff–
Appellant,

v.

AUSTRALIA PACIFIC RESOURCES, LTD., an Australian corporation; APM Land, Inc., a Colorado corporation; APM Tailings, Inc., a Colorado corporation; and William Howell, Defendants–Appellees.

No. 92CA0001.

Colorado Court of Appeals,
Div. II.

Oct. 22, 1992.

The Law Firm of Guy M. McCready, Guy M. McCready, Colorado Springs, for plaintiff-appellant.

Mulliken, Gleason & Weiner, P.C., Edward A. Gleason, Colorado Springs, for defendants-appellees.

Opinion by Judge RULAND.

In this action to recover a finder's fee, plaintiff, Charosa Olga Kerr, appeals from a judgment in favor of defendants, Australia Pacific Resources, Ltd. (APR), APM Land, Inc., APM Tailings, Inc., and William Howell. We affirm.

In March of 1988, William Wiley and defendant APR entered into an "Exclusive Buyer's Agency Contract" whereby Wiley was appointed agent "for the acquisition of any property [APR as buyer] wishes to acquire ... of that property known as Gold Hill Mesa" located in Colorado Springs. The Golden Cycle Mill was previously located on the mesa, and the mill processed gold ore from the Cripple Creek Mines over the period of 1908 through 1949.

APR agreed to pay Wiley a fee of 5% of the purchase price for any property APR acquired. The agreement also provided that any compensation paid would be for services rendered after March of 1988.

As the result of Wiley's efforts, APR thereafter entered into an option contract for the purchase of 288 acres of Gold Hill Mesa together with several million tons of gold ore tailings located upon the surface. The purchase price of $13.5 million was allocated at $5 million for the land, and $8.5 million for the surface tailings and other mineral interests.

Wiley subsequently assigned his interest in the agency agreement to plaintiff Kerr, and in March of 1989, APR closed on the purchase contract for the previously agreed price. Kerr, following refusal of her demand for payment, brought this action against APR and others for money damages of $662,500, representing the unpaid portion of the 5% purchase price fee.

Defendants answered and asserted, among other things, that the agency contract was unenforceable because the transaction involved the transfer of real estate. Specifically, because Wiley was not a licensed real estate agent or broker, defendants argued that payment of the fee would violate the provisions of § 12–61–117, C.R.S. (1991 Repl.Vol. 5B). Kerr, on the other hand, asserted that the agreement pertained to the sale of severed mineral interests and that, therefore, no license was required pursuant to a statutory exception contained in § 12–61–101(4)(f), C.R.S. (1991 Repl.Vol. 5B).

Following a bench trial, the court concluded that the agency contract contemplated acquisitions of real property and that, therefore, the exception from licensure for those dealing in severed mineral interests did not apply to Wiley.

On appeal, Kerr's sole contention is, in essence, that the principal object of the defendants here was to obtain the gold tailings, so that the purchase of the land upon which the tailings were located was incidental and wholly collateral. Consequently, Kerr argues, the statutory licensure exception pertinent to dealings in severed minerals should apply. We disagree.

Section 12–61–117, C.R.S. (1991 Repl.Vol. 5B) prohibits any person from receiving compensation as an agent to sell or purchase real estate unless that person is a licensed real estate broker or salesperson pursuant to § 12–61–102, C.R.S. (1991 Repl. Vol. 5B). As pertinent here, § 12–61–101(4)(f) excepts from the definition of real estate broker or salesperson any person engaged in the act of acquiring, purchasing, or dealing in "severed mineral or royalty interests in real property."

It is undisputed that, at the times pertinent here, Wiley did not have an active salesperson's license because it had been placed on inactive status on January 1, 1987. Thus, he was not entitled to a fee for his services unless the statutory excep-

tion applied. *Barton v. Sittner,* 723 P.2d 153 (Colo.App.1986); *Broughall v. Black Forest Development Co.,* 196 Colo. 503, 593 P.2d 314 (1978).

The contract for the purchase of the property here included the sale of 288 acres of land, as well as "all minerals in, on, or under the land." The parties agree that the quoted language includes the tailings.

▆ The term "severed mineral interest" generally refers to ownership of rights to minerals which are conveyed independent of either the surface estate or another mineral interest. *See* 6 *American Law of Mining* § 200.01 (2d ed. 1984); *see also Texaco, Inc. v. Short,* 454 U.S. 516, 102 S.Ct. 781, 70 L.Ed.2d 738 (1982) (addressing the statutory termination of severed mineral interests by lapse of time).

Here, however, we conclude, as did the trial court, that the tailings were a component of the real property and thus could not be properly characterized as a severed mineral interest. *See Smith v. El Paso Gold Mines, Inc.,* 720 P.2d 608 (Colo.App. 1985) ("dump rock" from a gold mine constitutes real and not personal property); *see also Schnell v. Gustafson,* 638 P.2d 850 (Colo.App.1981) (the presence of uranium tailings constitutes a latent defect in the sale of real estate improvements). This is because the tailings were placed on the property as waste and, thus, are deemed to become annexed to the real estate over time. *See Hayes v. Alaska Juneau Forest Industries, Inc.,* 748 P.2d 332 (Alaska 1988) (addressing tailings placed on a mill site for disposal and not for future use); *see also Steinfeld v. Omega Copper Co.,* 16 Ariz. 230, 141 P. 847 (1914) (addressing the character of tailings dumped on the same site as the mine).

Accordingly, because Wiley had no license, his assignee can recover no fee.

The judgment is affirmed.

PIERCE and REED, JJ., concur.