CONWAY ET AL., RESPONDENTS, *v.* FABIAN ET AL., APPEL-LANTS.

(No. 7,787.)

(Submitted November 10, 1938; Resubmitted March 13, 1939; Decided April 29, 1939.)

[89 Pac. (2d) 1022.]

Mr. *J. E. Healy* and *Mr. S. P. Wilson,* for Appellants, submitted an original and a reply brief; *Mr. Wilson* argued the cause orally.

294

*Mr. W. J. Cushing, Mr. John Collins* and *Messrs. Gilbert, Gilbert & McFadden,* for Respondents, submitted an original and a supplemental brief; *Mr. Collins* and *Mr. Theo. F. McFadden* argued the cause orally.

HONORABLE RUDOLPH NELSTEAD, District Judge, sitting in place of MR. JUSTICE STEWART, disqualified, delivered the opinion of the court.

This is an appeal from a judgment of the district court of Beaverhead county. The action involves the ownership of a quantity of mill tailings known as the Greenwood Dump, deposited upon certain placer mining ground claimed by defendants. The trial court in its findings of fact denominated the action as one in trespass to try title to personal property on the part of plaintiffs, and the right of possession, interest and claims of defendants to mining rights and locations. It was tried as an equity case by the court without a jury.

The amended complaint alleges that plaintiffs are the owners and in possession of the mill tailings in question, situated on the west side of Trapper Creek in Beaverhead county, stored upon lands that slope to the northward and eastward and are kept in place on their lower sides by means of log cribbing constructed by plaintiffs and their predecessors in interest when the tailings were deposited. The amended complaint further states that defendants for more than a year last past, without the consent of plaintiffs, repeatedly entered upon the tailings, carried away large quantities thereof and trampled down and wasted large quantities of the remainder. As a result of defendants' actions plaintiffs claim damages in the sum of $1,000, and ask that defendants be enjoined from continuing the trespass on their property.

A demurrer interposed to the amended complaint was overruled and defendants thereupon filed their answer, denying the allegations of the amended complaint, and setting out affirmative defenses, as follows: (1) Estoppel resulting from previous litigation involving the property in question, and that by reason of the judgment in the former case, and because of having elected to pursue a different remedy, plaintiffs are estopped to urge the present case; (2) that plaintiffs' cause of action is barred by subdivisions 2 and 3, section 9033, Revised Codes of 1935; (3) adverse possession by defendants for the period of the statute of limitations of the real estate of which the mill tailings are a part; (4) laches by plaintiffs in their long delay in asserting claim to the tailings by this particular action; and (5) a cross-complaint whereby defendants sought to have their title to the placer mining claims on which the tailings were situated, known as the Bird and Josephine Placers, quieted against all adverse claims by plaintiffs.

The plaintiffs by reply denied all of the affirmative matter in the answer, and by cross-complaint alleged that defendants have no interest or right of possession in the land on which the tailings are situated, by reason of the fact that the Land Department of the United States in the year 1930 rejected the defendants' application for patent on the Bird Placer on the ground

that no mineral discovery had been made thereon. The decisions of the Register of the United States Land Office in Montana, of the Commissioner of the General Land Office, and of the Secretary of the Interior are attached as exhibits to the reply and answer to the cross-complaint. Defendants moved to strike this defense from the reply and answer to the cross-complaint, which motion was sustained by the trial court. Thereafter plaintiffs were permitted by court order to amend the reply and answer to the cross-complaint by alleging that neither the defendants nor their predecessors in interest ever made a discovery of valuable minerals of any kind or character upon either the Bird Placer or the Josephine Placer, and that no valuable mineral of any kind or character exists, or ever existed, upon either of such mining claims. A demurrer by the defendants to the amendment was overruled, and thereupon defendants filed their reply to the answer to the cross-complaint.

At the request of the parties the trial court made findings of fact and conclusions of law, which may be briefly summarized as follows:

From 1881 to 1898 Helca Consolidated Mining Company was the owner of certain quartz mines near the head of Trapper Creek in Beaverhead county, as well as the owner and operator of a concentrating mill situated at Greenwood, on what is known as Everest Millsite No. 1, on the creek in question, working the mines and concentrating ores therefrom. The company had located four millsites, one of which was designated as Everest Millsite No. 1, which was later patented and is now owned by plaintiffs, concerning which and the tailings located thereon there is no dispute in this action. It also located Everest Millsites Nos. 2, 3 and 4, but no patent was ever issued on any of them, and these three sites were later restored to the public domain. In the operation of the mill the high grade ores were saved as concentrates and the residue deposited by water flowing below the mill in the form of tailings. The tailings contain mineral values, which fact was then known to Helca and its officers, but the metallurgical processes at that time and the primitive form of milling machinery then available were not sufficiently efficient to

recover such values. The trial court found that, with the intent to impound and preserve the tailings in question until by improved metallurgical processes and the invention of more efficient machinery the mineral values remaining might be recovered, the Helca, as such tailings were deposited, constructed bulkheads to impound the same, and continued to raise such bulkheads as the tailings dump advanced in height. The bulkheads were constructed of logs, the space between the logs being chinked and thicknesses of burlap installed in front so that water might escape therefrom, but the tailings remain impounded within the cribbing. In addition to the bulkheads the cribbings were tightened with logs extended inwardly and imbedded in the tailings as they were deposited. A large amount of money was expended in these constructions. During the course of the years after 1898 the owner and its successors in interest down to the present plaintiffs continued to expend money in labor and material in the repair of the cribbings for the purpose of preventing the tailings from escaping therefrom.

The trial court further found that, since the deposit and impounding of the tailings in question, plaintiffs and their predecessors in ownership and interest have been in actual, open, continuous and exclusive possession of all of the Greenwood Dump, and that they have not at any time abandoned the same. In the operation of the concentrating plant and the conveyance of the tailings by force of water flowing in a flume causing the tailings to be impounded within the cribbed enclosures, as heretofore described, a part thereof, particularly that consisting of the finer particles, was lost to the operators and spread upon and became a part of the soil in the surrounding area. In the course of time the logs, chinking and burlap rotted in many places, causing a certain amount of the tailings to be washed down by water of the creek and by rain, spreading the same over the lands below the enclosures. At the present time there remain impounded approximately 75,000 tons of tailings, of the value of one dollar per ton, which are in practically the same condition as when deposited by the operator, excepting that they

have settled and reached such an angle of repose as to render the cribbing protection no longer a necessity.

From the findings of the trial court it further appears that in 1911 the Darby Mining Company, one of the plaintiffs, became the owner of a one-third interest in the Greenwood Dump, and subsequently, in 1923, the plaintiff Conway purchased the remaining two-thirds interest. The plaintiffs and their predecessors in interest have been continuously in possession of the tailings. It further appears from the findings that during the two years preceding the commencement of the action defendants repeatedly entered upon, walked and trampled over the tailings, resulting in a considerable amount thereof becoming lost in the waters of the creek. This amount was determined by the trial court to be thirty tons.

The claim of defendants to the tailings in question is predicated upon the assertion that they are in possession of the Bird and the Josephine Placers, and that the Greenwood Dump is not personal property but a portion of the real estate constituting these placers. The findings disclose that defendants' predecessors located the Bird Placer in 1919, and the Josephine Placer in 1924, by compliance with statutory procedure and regulations for the location of placer mining claims; that precious metals and mineral values were discovered by the locators of each of such placers, but that such mineral values were not sufficient from the original and natural condition of the soil alone to warrant the location of a mining claim, but that when combined with the tailings from the milling operations which were spread over and mixed into the ground, there was sufficient mineral value to justify the locator in spending the time, effort and money in development work with the reasonable hope or expectation of finding mineral in paying quantities. The annual representation work had been done each year to the time of trial on both placer claims.

The trial court further found that the Bird Placer and the Josephine Placer were the property of defendants, subject only to the paramount title of the United States, but that defendants are not the owners nor in possession of the tailings impounded

on the claims, the plaintiffs having retained possession and ownership thereof at all times as personal property. In its findings the trial court also reviews the prior litigation, commenced in 1923, about nine years prior to the institution of this action, by plaintiffs' predecessors in interest, referred to in the record as the *Knippenberg Case,* deciding that such litigation is not *res judicata* as against the present plaintiffs.

As conclusions of law the trial court decided that the defendants are the owners of the two placer mining claims, including all the tailings that have spread over the ground or become imbedded in the soil, but their ownership is subject to the ownership of plaintiffs in the stored and impounded tailings, and that plaintiffs are entitled to a reasonable time to remove the tailings from the surface of the placers. Concluding that this is an equity action in which damages are incidental only, and in the nature of an action to quiet title to personal property, an award of damages was made against defendants in the sum of $30. On August 21, 1937, the court signed its judgment pursuant to the findings of fact and conclusions of law.

Defendants, who are appellants in this case, enumerate in their brief forty-two specifications of error. Plaintiffs, who are respondents herein, also filed a notice of appeal pursuant to section 9751, Revised Codes of 1935, and based their appeal upon twelve cross-assignments of error. At the outset we are confronted with a motion by defendants to dismiss the plaintiffs' appeal on the ground that it was not taken within the time allowed by law. A proper discussion of the points raised by defendants necessarily depends upon a determination of the validity of the plaintiffs' appeal, and if made in time, of the questions raised by the cross-assignments of error.

Did plaintiffs appeal from the final judgment to the supreme court within the time required by law? An appeal from a judgment in a civil action must be taken within six months after entry of the judgment. (Sec. 9732, Rev. Codes.) This statute also applies to a respondent who desires a review of any ruling made against him. (Sec. 9751, Id.) The findings of fact and conclusions of law by the trial court were made

July 22, 1937. The judgment is dated August 21, 1937, and was filed with the clerk August 25, 1937. Plaintiffs perfected their cross-appeal on February 10, 1938, more than six months after the findings of fact were filed with the clerk, but within six months after the judgment was filed. Defendants take the position that the findings of fact constitute a complete decision upon the issues in the case and that they are in all respects the final judgment of the court. In other words, they contend the trial court's findings cover the entire rights of the litigants, leaving nothing further to be done by the court other than the entry of judgment for the recovery of $30 damages by plaintiffs. It is urged that the entry of this judgment became the purely ministerial act of the clerk (sec. 9403, Rev. Codes), and that the presumption obtains that the clerk performed this ministerial duty (subds. 15, 17, 23 and 33, sec. 10606, Id.). In support of their contention defendants cite the decisions of this court in *McIntyre* v. *Northern Pac. R. Co.*, 58 Mont. 256, 191 Pac. 1065, and *Hynes* v. *Barnes*, 30 Mont. 25, 75 Pac. 523. Section 9403, supra, applies to trials by jury only, and the cases referred to by defendants lay down the general rule that the entry of the judgment in such cases is the act of the clerk, but, when entered, becomes the judgment of the court.

It is our conclusion that defendants' argument is not applicable to the final judgment in this case. The amended complaint, as stated by the trial court in its findings, is in the nature of an action to try title to personal property wherein plaintiffs asked for injunctive relief because of continued trespasses by defendants. The answer contains numerous equitable defenses. Defendants filed a cross-complaint in equity to quiet title as against the plaintiffs to the Bird and Josephine placer mining claims. A jury was waived by the respective parties and the action tried as a suit in equity (secs. 9365 et seq., Rev. Codes). At the conclusion of the trial the parties requested the trial court to make findings of fact and conclusions of law. In *State ex rel. Reser* v. *District Court*, 53 Mont. 235, 163 Pac. 1149, 1150, the clerk assumed to enter a judgment upon the findings of the court. In annulling the judgment this court

used the following language: ''Counsel for respondents   &ast;  &ast;  &ast; argue that the findings of fact and conclusions of law were the judgment which the clerk did but enter and record under the plain mandate of section 6764, Revised Codes. This, however, is untenable, for the very language of that section makes it clear that the findings of fact and conclusions of law are not the judgment, but merely the foundation for the judgment.'' The language of this court in *Galiger* v. *McNulty*, 80 Mont. 339, 260 Pac. 401, 403, is particularly pertinent: '' 'A judgment does not reside in its recitals but in the mandatory portion of it.' (33 C. J. 1194.) 'The decisions or findings of a court, referee, or committee do not constitute a judgment, but merely form the basis upon which the judgments are subsequently to be rendered. A verdict is not a judgment, which may or may not be rendered upon it. The findings are not a judgment any more than is a verdict of a jury. Such findings or decisions amount only to an order for judgment.' (33 C. J. 1052.) 'A finding of fact of the trial court cannot be considered an adjudication, or used as evidence, unless some other ground can be found for its use than merely that it is a finding of the court.' '' A mere reading of the definition of ''judgment'' is sufficient. It is the final determination of the rights of the parties. (Sec. 9313, Rev. Codes.)

We conclude that the judgment signed August 21, 1937, and filed with the clerk August 25, 1937, is the final judgment in this case, and that plaintiffs, by filing and serving their notice of appeal on February 10, 1938, took such action within the time required by law. Defendants' motion to dismiss the cross-appeal is therefore overruled.

Plaintiffs' cross-assignments, although twelve in number, may be placed in three categories: Did the trial court commit error (1) in sustaining the motion to strike the proceedings in the Land Department relating to the Bird Placer; (2) in concluding that defendants are the owners, subject to the paramount title of the United States, and in possession of the Bird and Josephine placer mining claims; and (3) in concluding that plaintiffs, as owners of the cribbed tailings on these placers, are

required within a reasonable time to remove the same therefrom? These points will be considered in the opinion with defendants' specifications of error.

The first question confronting us is one of pleading. Does ▮ the plaintiffs' amended complaint state a cause of action? It is alleged that "the plaintiffs are and at all times herein mentioned, were the owners and in possession of a large quantity of mill tailings known as the Greenwood Dump." Defendants argue that this allegation is insufficient in that it fails to disclose the source of plaintiffs' title, but with this contention we cannot agree. It is the settled rule in respect to actions concerning rights in personal property, as well as in real property, that a general allegation of ownership in a pleading is sufficient to admit proof of any legal title, general or special. No distinction may be drawn between real and personal property. (As to real property, see *Thrasher* v. *Hodge,* 86 Mont. 218, 283 Pac. 219; *McCauley* v. *Gilmer,* 2 Mont. 202; *Sullivan* v. *Dunphy,* 4 Mont. 499, 2 Pac. 284.) In *Reynolds* v. *Fitzpatrick,* 40 Mont. 593, 107 Pac. 902, Mr. Justice Holloway, writing the opinion of the court, and referring to personal property, said, 40 Mont. page 596, 107 Pac. page 903: " 'General averments of ownership and right of possession authorize the plaintiff to introduce any evidence whatever to show how he became the owner and entitled to possession, and he is not restricted to proof of any particular origin of ownership or right to possession.' " There is no distinction between pleading ownership and right to possession in an action of trespass to personal property and in an action for conversion of personal property. In *Moore* v. *Crittenden,* 62 Mont. 309, 204 Pac. 1035, 1036, this court said with reference to a pleading in conversion: "It is the rule that in an action for conversion the plaintiff is not required to notify the defendant of the precise nature of his (plaintiff's) title, and that general averments of ownership and right to possession authorize the introduction of evidence to show the source or character of plaintiff's title."

The portions of the amended complaint which appear to the defendants as objectionable we hold to be statements of ulti-

mate facts, and that the amended complaint states a cause of action.

The most important question in this suit is undoubtedly the ▉ property classification to be given to the tailings known as the Greenwood Dump. Although the trial court found that the Bird and the Josephine Placers were the property of the defendants, subject to the paramount title of the United States, it further found that the defendants are not the owners nor in possession of the tailings which are the subject of this controversy and impounded on the claims in question, the plaintiffs and their predecessors in interest having retained possession and ownership thereof at all times as personal property. Defendants say in their brief that they find no difficulty in classifying the tailings as real estate; that they are a part of the land and belong to the holders of the placer claims. They argue that a deposit of tailings becomes an accretion to the land (*Rogers* v. *Cooney*, 7 Nev. 213), and that dumps are real estate (Morrison's Mining Rights, 16th ed., p. 245). It is contended that tailings in all cases are but the solid material of the earth removed from one place to another, earth mingled with earth, whatever may be the ingredients of which it is composed, whether soil, rock or other substance. This argument is based on section 22, Title 30, U. S. C. A. (R. S., sec. 2319), which has been construed to mean that the locator of a placer mining claim has a possessory title thereto and the right to the exclusive possession and enjoyment thereof, and this exclusive possession and enjoyment includes the right to work the claim, to extract the minerals therefrom, the right to exclusive property in such mineral as well as the right to defend his possession. (*Belk* v. *Meagher*, 3 Mont. 65, affirmed 104 U. S. 279, 26 L. Ed. 735.)

In our opinion, however, this construction of the law does not include tailings placed thereon from milling operations by their owner prior to a placer location and which have not been ▉ abandoned. The owner of tailings may deposit them either upon the public domain or on lands of which he has possession; and if thereafter a mineral location is made upon the same ground the locator takes subject to the right of this prior

deposit. The trial court in its findings of fact found that "the defendants have not been the owners nor in possession of the tailings stored, impounded and cribbed in or the parts thereof that may be located upon such Bird and such Josephine Placer mining claims, but the plaintiffs and their predecessors have retained the ownership and possession of such tailings at all times as personal property of the plaintiffs and their predecessors."

The foregoing finding was made on conflicting evidence, and in a case of this character, where the contention is made that the evidence is insufficient to support a finding of the trial court, the supreme court, in its review thereof, will go no further than to determine whether there is a clear preponderance against it, and when the evidence furnishes reasonable grounds for differing conclusions, the finding will not be disturbed. (*Nolan* v. *Benninghoff*, 64 Mont. 68, 208 Pac. 905; *Leigland* v. *Rundle Land & Abstract Co.*, 64 Mont. 154, 208 Pac. 1075.)

What constitutes abandonment of personal property? To establish abandonment both intention to abandon and actual relinquishment must be shown. From an examination of the record neither is disclosed in this case, but on the contrary, there appears a clear intention to preserve and protect the property rights in the tailings. In *Steinfeld* v. *Omega Copper Co.*, 16 Ariz. 230, 141 Pac. 847, 848, the court said: "The intention with which the owner of the property extracted the ore from the ground and the purpose and intention of the owner with which it was placed on the dump is controlling in arriving at a solution of the question of whether the ore after having been extracted and placed in the dump was personalty or realty."
"Abandonment" is a word which has acquired a technical meaning and there can be no reason why a different signification should be given to it when applied to the loss of right to a mining claim than that which it has received in the books. It is the relinquishment of a right; the giving up of something to which one is entitled. In determining whether one has abandoned his property or rights the intention is the first and paramount object of inquiry. This intention is ascertained not only from the statements which may have been made by the

owner of the property, but also from the acts of the owner. The trial court in its findings of fact referred to some of the work of the plaintiffs' predecessors in interest in preserving the tailings intact with the expectation that the metallurgical processes would improve so as to justify milling them again. Conway, one of the plaintiffs herein, and a successor in interest of the Hecla Mining Company, arrived at the latter's mine in 1881 and was engaged as a bookkeeper. The company was then shipping the higher grade ores, and later erected a mill to treat the low-grade ores. The company, having located the four millsites referred to, built a concentrator on Everest No. 1, and assays were constantly made and recorded. Conway testified that the report on the assays was brought to his desk every day, and disclosed that the tailings contained values which the company wished to preserve. As a result thereof the Hecla built barriers to impound the tailings, and as they were deposited additions were made to the cribbing. The cribbing on the lower side, next to Trapper Creek, was thirty feet or more in height and required approximately four thousand logs at an average cost of one dollar per log. About twenty acres of land were covered by the deposit. The company continued to operate for seventeen years. Some effort was made, unsuccessfully, by plaintiffs' predecessors to recover the values from the tailings through a lease to third parties. When the present plaintiffs succeeded to the Greenwood Dump they made further repairs upon the cribbings from time to time, and exhibited the dump to prospective purchasers or lessees as well as taking away samples ever since the tailings were stored. This, together with other evidence in the record, justified the trial court in finding that the tailings are personal property, and they have never been abandoned or relinquished by the plaintiffs or their predecessors in interest.

The Greenwood Dump was deposited upon the millsites located by plaintiffs' predecessors in interest over twenty years before the defendants located the Bird Placer. This location was made subject to the right of ownership of plaintiffs in the tailings. In *O'Keiffe* v. *Cunningham*, 9 Cal. 589, the court enunciated the following rule in the early days of western min-

ing: "A party may take up a claim for mining purposes that has been and still is used as a place of deposit for tailings by another; * * * his mining right will be subject to the prior right of deposit." (See, also, *Jones* v. *Jackson,* 9 Cal. 237, 238.)

In *Ritter* v. *Lynch,* (C. C.) 123 Fed. 930, 931, Lynch had conducted tailings from a mill and ran them upon lands later located as his adversary's placer. Having built a reservoir to keep them confined, thereby preserving them from waste and destruction until such time as they could profitably be worked and sold, the court held that Lynch was their owner and, in the course of its opinion, said: "It must be admitted that, if the tailings had been suffered by Mr. Lynch to flow where they listed, his claim of ownership therein would have to be considered as abandoned; or if the tailings were, by their own uninterrupted flow, lodged upon the land of another, they would be considered as an accretion, and belong to the owner of the land. If they were allowed to flow in their natural course, and accumulate on vacant and unappropriated public land, they would become subject to appropriation by any one who took them up and pursued the steps and proceedings analogous to the location of placer mining claims. (1 Lindley on Mines, 2d Ed., sec. 426, and authorities there cited.) But no such conditions appear in this case."

A comparatively recent case supporting the rule enunciated in the foregoing cases is *Goldfield Consolidated Milling & Transp. Co.* v. *Old Sandstorm Gold Min. Co.,* 38 Nev. 426, 150 Pac. 313, 317. In that case, decided many years after the present Mining Code of the United States was enacted, the respondent therein instituted proceedings in the district court to condemn portions of certain patented mining claims belonging to appellants. The court, in deciding the question as to whether tailings which had been deposited by respondent on appellant's placer claims were real estate or personal property, says: "In considering this question, the lower court found it necessary to determine also the question of the ownership of the tailings deposited thereon. It appears from the evidence that respondent, after

treating the ores which it had purchased, deposited the tailings upon a portion of its own land which lies in a gulch, through which water flows at times in great volume and with great force. It also appears from the evidence that it was necessary for respondent to keep a man employed at all times to dam up the tailings so that they would not wash away and be lost, and as a consequence of this damming process the tailings eventually were forced upon the land of appellants. It also appears that these tailings are valuable and can be re-treated profitably. Respondent seeks to re-treat these tailings, and to do so finds it necessary to erect a tram to convey them to its mill. Appellants claim that they are now the owners of the tailings. Having purchased the ores from which the tailings came, respondent was the owner of them at the time they were deposited upon the lands of appellants. There are certain well-known methods of parting with title to property (32 Cyc. 680), and the only way in which appellants claim that respondent parted with the title to the tailings was by abandonment.'' Deciding that there had been no abandonment by respondent of ownership of the tailings, the court said: ''It [respondent] conserved the tailings by having a man on hand to keep a dam built up so as to prevent their being washed away, which it is not likely it would have done had it intended abandoning them. The testimony was to the effect that respondent did not intend to abandon the tailings. We think the conclusion of the trial court, to the effect that respondent did not abandon the tailings, is warranted by the evidence.''

The case at bar presents a much stronger situation in support of plaintiffs' contention in that the tailings were deposited on millsites legally located by plaintiffs' predecessors in interest, and then in their possession; whereas in the *Goldfield Consolidated Milling Case,* supra, they were deposited upon patented mining claims of the appellants therein. We therefore conclude that all of the tailings impounded in the Greenwood Dump are, as the trial court found, the personal property of the plaintiffs.

Defendants on rehearing charge that in arriving at the foregoing conclusion we overlooked certain decisions which are decisive of this case. Particular reliance is placed on the opinion of the court in *Watterson* v. *Cruse,* 179 Cal. 379, 176 Pac. 870, 871, wherein the Southern Belle Mines Co., owner and in possession of three millsites, forfeited its claim to the ground by reason of its failure to comply with the law. The company sold its buildings thereon consisting of a quartz mill, a dwelling house, a boarding house, and other buildings to plaintiffs with the right to remove the structures. Defendants made a discovery of a mineral bearing-lode and relocated a lode mining claim. Defendant commenced to remove some of the buildings, whereupon plaintiffs brought an action seeking an injunction to restrain the defendant from so doing. The court says in the course of its opinion that the relocator was clothed with "the exclusive right of possession and enjoyment of all the surface included within the lines of the location" (R. S., sec. 2322, 30 U. S. C. A., sec. 26), and that this carried with it the right of possessing and enjoying everything which had been so affixed to the land as to become a part of it. Quoting Lindley, the court says: " 'Such improvements or betterments as have been placed upon the property by the original locator, if they fall within the class designated as fixtures, become a part of the realty, and the subsequent appropriation of the land carries with it, necessarily, whatever may be affixed to it.' " But there is a fundamental distinction between buildings and other property which have been constructed on a mining claim and affixed in such a manner thereto that they are a part of the land itself and mining tailings which have been preserved by the owners thereof as personal property. The general rule is that "the manner in which the attachment is made, the adaptability of the thing attached to the use to which the realty is applied, and the intention of the one making the attachment determine whether the thing attached is realty or personalty." (*Montana Elec. Co.* v. *Northern Valley Min. Co.,* 51 Mont. 266, 153 Pac. 1017, 1018; *Padden* v. *Murgittroyd,* 54 Mont. 1, 165 Pac. 913.)

Was error committed by the district court in quieting title in defendants to the two placer claims? By reason of the decision of the Secretary of the Interior in *Conway* v. *Fabian,* 53 Land Dec. 115, which involved the Bird Placer only, and not the Josephine, the rights of defendants in each of them must be considered separately. Is the Bird a valid placer claim and are the defendants entitled to a decree quieting title? These questions are raised by plaintiffs' cross-assignments of error and refer to (1) the ruling of the trial court, a judge of the second judicial district then presiding, sustaining the motion to strike from the reply and the answer to the cross-complaint all of the decisions relating to certain prior proceedings in the United States Land Department, and (2) the finding of the trial court quieting title to the Bird. To determine the correctness of the court's ruling it is necessary to review the history of the litigation between the parties to this action and their respective predecessors in interest. As stated, the trial court's findings of fact disclose that the predecessors in interest of plaintiffs located four millsites in the eighties, Everest Nos. 1, 2, 3 and 4; that a mill was erected on site No. 1, and that the tailings from their mining operations were deposited on the several millsites. Patent was secured on millsite No. 1, but no improvements were made on sites Nos. 2, 3 and 4.

Antone Grosso, in July, 1919, made a placer location called the Bird on the millSites known as Everest Nos. 2, 3 and 4, on which is situated a portion of the Greenwood Dump now in controversy. The Josephine, the status of which will later be considered, was located as a placer by defendants in 1924 on contiguous ground on the same millsites. In January, 1923, Grosso filed his application for a patent on the Bird. Knippenberg and others, plaintiffs' predecessors in interest, in March, 1923, filed an adverse claim under sec. 30, Title 30, U. S. C. A. (R. S., sec. 2326), against the application, alleging superior rights to the greater part of the land covered by the Bird by virtue of prior locations and maintenance of Everest Millsites Nos. 2, 3 and 4. An adverse suit, referred to herein as the

*Knippenberg Case,* was instituted by Knippenberg and others in April, 1923, in the district court of Beaverhead county. Motions to dismiss the adverse claim filed in the United States Land Office by Grosso and others, predecessors of defendants herein, were overruled by the land office and, with the subsequent approval of the Commissioner of the General Land Office, further proceedings on Grosso's application for patent were stayed to await the outcome of the adverse suit.

A demurrer interposed by defendants in the suit was sustained. Later, Hecla Consolidated Mining Company was substituted for plaintiffs therein in an amended and supplemental complaint. Defendant demurred to this amended complaint for want of substance, and because plaintiff had no capacity to sue. The demurrer having been sustained on these two grounds, upon plaintiff's failure to amend, judgment of dismissal "upon the merits" was entered. The amended and supplemental complaint of the Hecla company alleged in substance that it was the owner, subject to the paramount title of the United States, and in possession of the three millsites located and recorded as Everest Millsites Nos. 2, 3 and 4; that defendant located the Bird Placer on a portion of the three millsites so claimed by plaintiff, but that the land in question is nonmineral in character, and defendant had failed to comply with the law relating to placer mining claims; that the location was made solely for the purpose of obtaining mill tailings lying loose upon the surface of the ground. The prayer of the complaint required the defendant to set forth the nature of his claim to the premises aforesaid, and that it be determined by a judgment of the court that the defendant had no estate, right, title or interest whatever in the three millsites, portions of which were embraced within the boundaries of the Bird Placer. No testimony of any kind whatsoever was submitted to the court in that case by either of the parties, but the judgment was based solely upon the ground stated in the motion for dismissal, to-wit: that the court having purposely given no leave to further amend, a judgment dismissing the action on the merits be en-

tered, and that plaintiff (Hecla Consolidated Mining Company) take nothing by the action.

On the termination of the adverse suit the United States Forest Service lodged protest with the land department against Grosso's application for patent on the Bird Placer, charging that there was no discovery of minerals and that the location was made because of the mineral values in the tailings, the property claimed by these plaintiffs, and not because of mineral values in the land. Thereafter Conway also filed a protest against the application for patent, averring that he and the Darby Mining Company were then the owners of the tailings deposited on the land, and alleged generally the same grounds set forth in the protest by the United States Forest Service. A hearing on the application for patent and the protests was had before the United States Commissioner at Butte in January, 1928.

In November, 1928, the Register and Receiver of the United States Land Office at Helena, after having reviewed the testimony taken before the commissioner, found (1) that no valid discovery of placer gold or other valuable mineral has been made upon the Bird Placer mining claim, and (2) that the Bird Placer was not located, and the patent thereto was not sought, for any valuable deposits of mineral known to exist therein but to obtain the valuable tailings from the milling operations of the Hecla Consolidated Mining Company which have been impounded and stored upon and are now upon, the ground embraced in said claim. An appeal was taken to the Commissioner of the General Land Office, who, after reviewing at length the testimony submitted before the United States Commissioner, found on the question as to whether or not the Bird Placer was mineral or nonmineral in character as follows: "The only value which the lands have are because of the tailings thereon, which tailings were mined from other lands and placed thereon, thus becoming personal property. As a valid discovery has not been made within the limits of the claim of minerals occurring in their natural states, and as nonmineral lands on which are deposited tailings taken from other lands,

claimed by the original owners or their successors in interest, are not subject to location under the United States mining laws; *the location is null and void.* Your decision is affirmed, and mineral application 062827 (the Bird) is held for rejection subject to the right of appeal within thirty days from notice to the Secretary of the Interior, in default of which appeal the application will be rejected without further notice." An appeal was thereafter taken to the Secretary of the Interior, whose decision was rendered June 9, 1930. (*Conway* v. *Fabian,* 53 Land Dec. 115.) The Secretary of the Interior refers to the fact that the Commissioner of the General Land Office affirmed the local Register in holding for rejection the application for patent to the Bird Placer on the ground that *the claim was void because made on nonmineral land.* The secretary's decision concludes as follows: "As the evidence shows convincingly that the land in its natural condition is nonmineral in character, and that under the conditions shown no mineral character is imparted to it by the deposit of the tailings, the commissioner's decision is affirmed." A motion by defendants herein for rehearing before the Secretary of the Interior was denied July 29, 1930. Thereafter a petition by defendants for the exercise of supervisory authority was addressed to the Honorable Ray Lyman Wilbur, Secretary of the Interior, who concluded that the petition was without merit.

Defendants herein requested the district court to find as a fact that the adjudication in the *Knippenberg Case* is *res judicata* of the questions here involved and that respondents are estopped by such judgment to maintain this action, and on refusal of the court to so find defendants specify error. They say: "The judgment was against the then plaintiffs upon the merits and is equally binding upon the present plaintiffs. Section 9317, Revised Codes 1935, provides for the dismissal of actions and the entry of non-suits, and section 9318 provides that every judgment, other than those mentioned in section 9317, must be rendered on the merits. Section 9320 expressly provides that a judgment of dismissal is not a bar to another action unless it expressly declares, or it appears, by the judgment roll, that

it is rendered upon its merits. The judgment dismissing the adverse suit does expressly declare that it is rendered on the merits. These statutes have received thorough consideration by our Supreme Court" (citing cases). No doubt this is the general rule in Montana. It must be kept in mind, however, that plaintiffs' cause of action in this case is directed to the tailings as personal property and to such relief as will insure to them full enjoyment of their ownership thereof, including the prevention of future trespass by defendants on the Greenwood Dump; whereas the *Knippenberg* suit was commenced pursuant to sec. 30, Title 30, U. S. C. A. (R. S., sec. 2326) to determine the fact that the plaintiffs therein were the owners and entitled to possession of the three millsites. It is true that the tailings were mentioned in the amended complaint but merely referred to as lying loose upon the ground. This does not establish the contention that plaintiffs in the *Knippenberg* suit asserted the tailings are real estate. Section 10558, Revised Codes 1935, defines the effect of a judgment as conclusive between the parties and their successors *litigating for the same thing* under the same title. In order that a party may invoke the rule of *res judicata* in a subsequent suit the subject matter of the litigation must be the same. (34 C. J. 811.)

For another reason the rule upon which defendants rely does not apply to the judgment in the *Knippenberg Case*. The purpose of an adverse suit is stated as follows in section 30, Title 30, U. S. C. A., supra: "It shall be the duty of the adverse claimant, within thirty days after filing his claim, to commence proceedings in a court of competent jurisdiction, to determine the question of the right of possession, and prosecute the same with reasonable diligence to final judgment; and a failure so to do shall be a waiver of his adverse claim." Such an action is purely statutory and state statutes regulating generally actions for the recovery of real property or questioning the title thereto have no application. (*Lily Min. Co.* v. *Kellogg*, 27 Utah, 111, 74 Pac. 518; *Providence Gold Min. Co.* v. *Burke*, 6 Ariz. 323, 57 Pac. 641; *Strasburger* v. *Beecher*, (C. C.) 44 Fed. 209, 214.) There is no question about the fact that plaintiffs' predecessors,

having failed in the adverse suit, cannot in a subsequent action claim any title to the ground involved which may have existed at the time of the commencement of the adverse suit. (*Kannaugh* v. *Quartette Min. Co.*, 16 Colo. 341, 27 Pac. 245; *Wight* v. *Dubois*, (C. C.) 21 Fed. 693.) However, the judgment in favor of defendants in the *Knippenberg Case* is insufficient even though it recites that it is rendered "on the merits." This court, in *Lozar* v. *Neill*, 37 Mont. 287, 297, 96 Pac. 343, 346, over thirty years ago enunciated the rule with reference to adverse suits as follows: "In order to settle the practice in this state, we hold that a nonsuit is proper in these so-called adverse cases where the plaintiff fails to establish his case, and that after such nonsuit he has no further right to participate in the trial. These cases are somewhat anomalous, in that the defendant must proceed to introduce testimony in support of his claim, even though the plaintiff is no longer his adversary and the United States government is not a party to the action, to the end that the court may determine whether either party is entitled to a patent." An inspection of the judgment roll in the *Knippenberg Case* discloses affirmatively that the defendants therein, predecessors in interest of the defendants in the case at bar, introduced no testimony of any kind or character in support of their claim. By reason thereof we may not indulge in the presumptions upon which defendants' contention is based in favor of such judgment, and therefore conclude that the trial court did not err in holding that the plea of *res judicata* by defendants is not sustained.

For another reason defendants claim that plaintiffs are estopped by the former adjudication, in that by bringing the adverse suit they deliberately elected to consider the mill tailings in question as real estate. It is true that "a litigant has no right, as against the same adversary, to have a question, either of law or fact, relating to the same cause of action, twice adjudicated in the same court or another court of like jurisdiction, unless a re-examination of the question has been regularly ordered." (*In re Smith's Estate*, 60 Mont. 276, 199 Pac. 696, 703.) But here, again, defendants' argument is based on

the assumption that the tailings are a part of the real estate. It is useless to review what we have already said concerning this point in connection with the application of the rule of *res judicata*. The same reasoning as to the nature of the property and the cause of action applies to the election of remedies.

What is the status of the Bird Placer? The answer depends upon the construction to be given the decision of the Land Department. Serious consideration of this question leads to the conclusion that error was committed in striking from the reply and answer to the cross-complaint all of the proceedings in the Land Department. "The motion to strike has the effect of a demurrer, and for the purposes of this appeal all the allegations stricken are deemed to be true." (*Como Orchard Land Co.* v. *Markham*, 54 Mont. 438, 442, 171 Pac. 274, 275.) Defendants assume the position that the decision only amounted to a determination that on the showing made and work done up to the time the United States Land Department rendered its decision, and under the conditions then prevailing, the applicant was not entitled to have the United States then grant him a patent vesting him with the fee to the real estate. On the other hand, it is contended by plaintiffs that the decision of the Commissioner of the General Land Office, affirmed by the Secretary of the Interior, holding the Bird to be nonmineral in character and its location null and void, restored the real estate within its boundaries to the public domain.

Whether the land involved is mineral in character must be determined by the Land Department. Nothing in our public land laws is more firmly settled than that the disposal of public lands, including the lands valuable for their mineral deposits, is under the control of the Land Department, at the head of which is the Secretary of the Interior, and which includes a bureau, headed by the Commissioner of the General Land Office, to whom, as a special tribunal with quasi-judicial powers, Congress has confided the execution of the laws for the disposal of various kinds of public lands. The Land Department, as such special tribunal, has judicial functions with exclusive jurisdiction over controversies affecting title to public

318

land until patent is issued. (*Reed* v. *St. Paul, M. & M. R. Co.,* (D. C.) 234 Fed. 123.) To the same effect is the decision of the United States Supreme Court, written by Mr. Justice Van Devanter, in *Cameron* v. *United States,* 252 U. S. 450, 40 Sup. Ct. 410, 413, 64 L. Ed. 659, where the following language appears: "It may be laid down as a general rule, that in the absence of some specific provision to the contrary in respect to any particular grant of public land, its administration falls wholly and absolutely within the jurisdiction of the Commissioner of the General Land Office, under the supervision of the Secretary of the Interior."

Whether a certain tract of land is mineral or nonmineral is a question of fact on which the decision of the Land Department is conclusive except in cases of fraud. (*Johnson* v. *Drew,* 171 U. S. 93, 18 Sup. Ct. 800, 43 L. Ed. 88.) It is the duty of the courts to give full effect to the decisions of the Department when they have become final. (50 C. J. 1088; *Wright* v. *Town of Hartville,* 13 Wyo. 497, 81 Pac. 649, 82 Pac. 450; *Nevada Exploration & Min. Co.* v. *Spriggs,* 41 Utah, 171, 124 Pac. 770; *Cameron* v. *Bass,* 19 Ariz. 246, 168 Pac. 645.)

Reverting to the facts in this case, we find that a protest ▮▮▮▮ was filed against Grosso's application for a patent on the Bird by the United States Forest Service in 1924, and a second protest by Conway, plaintiff herein, in 1926. Although it is well-settled that claimants who are unsuccessful in an adverse suit may still, by way of protest in the patent proceedings, call the department's attention to irregularities in the patent application which were not determined by the court in its judgment (*Hughes* v. *Ochner,* 27 L. D. 396; *Opie* v. *Aubuen C. M. Co.,* 29 L. D. 230), nevertheless in such proceedings the applicant for patent and the United States are the only parties. A protest to the Land Department against the issuance of a patent is based upon that part of Revised Statutes, sec. 2325, Title 30, sec. 29, U. S. C. A., which reads: "And thereafter no objection from third parties to the issuance of a patent shall be heard, except it be shown that the applicant has failed to

comply with the terms of this chapter." Justice Brewer, in *Wight* v. *Dubois*, (C. C.) 21 Fed. 693, 696, referring to the right of protest, says: "I think all that it covers is the right to anybody to come in and enter his protest or objections; in other words, to say to the officers of the government that the applicant has not complied with the terms of the statute, and to insist that there shall be an examination by such officers to see if the terms have in fact been complied with. He does not appear as a party asserting his own rights; but if we may, so to speak, parallel these proceedings with those in a court, such an objector appears as an *amicus curiae*,—a friend of the court,— to suggest that there has been error, and that the proceedings be stayed until further examination can be had. Such a protest does not bring the protestant into court for the assertion of his own title or rights; does not revivify rights lost be a failure to adverse."

On an application for patent the Land Department in its decision may do one of three things: (1) issue a patent to the applicant, (2) reject the application for patent, and nothing more, and (3) reject the application for patent, and declare the land in question nonmineral in character and the location null and void.

Defendants seriously urge that Grosso's application was merely rejected, and nothing more. Many cases are cited supporting this argument, with particular emphasis on the decisions of the court in *Beals* v. *Cone*, 27 Colo. 473, 62 Pac. 948, 83 Am. St. Rep. 92 (dismissed on a writ of error), 188 U. S. 184, 23 Sup. Ct. 275, 47 L. Ed. 435, and *Clipper Min. Co.* v. *Eli Min. & L. Co.*, 194 U. S. 220, 24 Sup. Ct. 632, 633, 48 L. Ed. 944. But it must be kept in mind that the Land Department in the case at bar went further than merely rejecting the application for a patent. It declared the Bird Placer nonmineral in character and the location null and void. The court, in *Beals* v. *Cone*, supra, decided that the judgment of the department went only to the extent of rejecting the application for patent, *and nothing more*, leaving applicant with the same rights as though no application had ever been made. The same is true as to the

decision of the Supreme Court of the United States in *Clipper Min. Co.* v. *Eli Min. & L. Co.*, supra, the court saying: "It is true that the Commissioner of the General Land Office, in rejecting the amended application for the placer patent, said that he was not satisfied that the land was placer ground, or that the requisite expenditure had been made, and, further, that the locators had not acted in good faith, but were attempting to acquire title to the land on account of its value for townsite purposes and for the lodes supposed to be contained therein. This decision was affirmed by the Secretary of the Interior; but notwithstanding this expression of opinion by these officials, all that was done was to reject the application for a patent." But the following language from the same opinion supports our conclusion in this case: "Undoubtedly when the Department rejected the application for a patent it could have gone further and set aside the placer location, and it can now, by direct proceedings upon notice, set it aside and restore the land to the public domain."

The Land Department in the case at bar, having declared the Bird Placer null and void, the land within its boundaries was necessarily restored to the public domain. On the contrary, in all of the cases upon which defendants rely the decisions are based upon the fact that the Department did no more than reject the application of the placer claimant for a patent. Such rejection did not restore the land to the public domain; it did not divest the patent claimant's right to the possession of his claim, but it simply checked or terminated the patent proceedings.

The right of the Land Department to declare an entry null and void is recognized in *Cameron* v. *United States*, supra, wherein the court says that upon a hearing the Land Department may determine "whether the claim is valid and, if it be found invalid, to declare it null and void."

The facts in *Cameron* v. *Bass*, 19 Ariz. 246, 168 Pac. 645, 647, present a situation very similar to the case at bar in that Cameron persisted in asserting rights under his Cape Horn lode after the land was declared to be nonmineral by the department. The court said: "Unless the land department does not possess

the power to determine the fact of the character of public lands, the determination reached in the patent proceeding is binding on the world.'' The court further said: ''In order to recover in this case the appellant must necessarily disregard the finding of the Land Department to the effect that the land embraced within the Cape Horn lode claim is nonmineral in character. The appellant bases his possessory title solely upon .the location commenced on the 10th day of April, 1902. The land office has decided that the land embraced within such location is nonmineral, and therefore not subject to location as such under the mining laws. The result of that decision is that appellant's location of the Cape Horn lode claim is void *ab initio,* that it never gave appellant any rights therein, and that such actual possession as appellant had based upon a mining location was a possession founded upon no right as against the government because of the nonmineral character of the land. * * * Where such decision [of the Land Department] becomes final, certainly the claimant can assert no rights dependent thereon, and while the evidences of location are not physically brought before the department and cancelled, the decision is efficient and sufficient to extinguish absolutely, and forever, all force and effect said location presumably ever had, and to destroy such location and all evidence thereof for any purpose. Any attempt on the part of the claimant to thereafter assert any right based upon said location, so decided invalid, is a collateral attack upon the decision and without effect.''

The Land Department, having adjudged the Bird Placer nonmineral, and therefore null and void, the force and effect of its location is destroyed, and the land within its boundaries has reverted to the public domain. Only the United States may now question the right of plaintiffs to enter thereon and preserve their tailings in any manner they may desire.

Defendants call attention to the fact that plaintiffs presented no petition for rehearing on this court's former decision sustaining the district court in striking from the reply the proceedings of the Land Department. The answer to this argument appears in *United States Nat. Bank* v. *Great Western Sugar Co.,*

60 Mont. 342, 199 Pac. 245, 248, where the court says: "On rehearing it is the prerogative of this court to review the entire case and correct any error that may be apparent, even though such action may not be favorable to the movant."

What is the status of the Josephine Placer? The trial court found that this placer was located in 1924 by compliance with statutory procedure and regulations for placer mining claims; that mineral values were discovered thereon, not sufficient from the original and natural condition of the soil alone, but when combined with the tailings spread over and mixed into the ground were of value to justify the locator in spending money, time and effort in development work, with the reasonable expectation of finding mineral in paying quantities. The court also found that the provisions of the Montana law for the location and recording of mining claims as required by sections 7365, et seq., Revised Codes, 1935, had been complied with, and that defendants are entitled to possession of the Josephine Placer, subject to the paramount title of the United States, and also to the right of plaintiffs to remove their tailings which are a part of the Greenwood Dump from the placer within a reasonable time, giving to plaintiffs the right of ingress and egress on the placer for the purpose of such removal. We concur in this finding excepting the grant to plaintiffs of the right of removal, because such grant necessarily results in giving the plaintiffs an interest in the real estate itself. In *Lehman* v. *Sutter*, 60 Mont. 97, 102, 198 Pac. 1100, 1102, the following language is used: "Section 2322, Rev. St. U. S. [6 Fed. Stats. Ann. 2d ed., p. 523] U. S. Comp. St., sec. 4618 [30 U. S. C. A., sec. 26], guarantees the exclusive right of possession to the prior locator, and thus excludes the idea that any one else may enter thereon for any purpose during the life of a prior location." (Citing cases.) Having no interest in the real estate itself, but being the owners of that portion of the Greenwood Dump situated on the Josephine, plaintiffs, if they desire to remove it, must resort to appropriate action for that purpose. (*Goldfield Consolidated Milling & Transp. Co.* v. *Old Sandstrom Gold Min. Co.*, 38 Nev. 426, 150 Pac. 313.)

We affirm the finding of the trial court quieting title in defendants to the Josephine Placer. The general rule is that "a person who is entitled under the laws of the United States to the possession of mining ground by reason of his having complied with the statute may defend his possession and have it protected in an action to quiet such right in him. He does not need to be in a position to acquire a patent from the United States for such ground. He may protect his possession and right from the attempts of others to procure a patent from the United States for land of which he is legally possessed and make no application for a patent himself in such proceedings." (*Poncia* v. *Eagle,* 28 Idaho, 60, 152 Pac. 208, 210; *Tibbitts* v. *Ah Tong,* 4 Mont. 536, 2 Pac. 759; *Maloney* v. *King,* 30 Mont. 158, 76 Pac. 4.)

In view of the fact that the trial court found that "since the deposit and impounding of such tailings plaintiffs and their predecessors in ownership and interest have been in actual, open, continuous and exclusive possession of all of said Greenwood Dump and consisting of the cribbed-in tailings, claiming the same as owners thereof, and have not at any time abandoned the same," the defense of the statute of limitations and the plea of laches are not involved.

Reference is made in defendants' brief to seven specifications of error, wherein the court permitted certain witnesses to testify, over objection by defendants' counsel, to hearsay testimony. From an examination of the entire record, this testimony may be disregarded for the reason that there is ample evidence to support the court's findings. The language of this court in *Olson* v. *City of Butte,* 86 Mont. 240, 250, 283 Pac. 222, 225, 70 A. L. R. 1352, is particularly applicable to these specifications of error: "This court must disregard any error 'which does not affect the substantial rights of the parties, and no judgment shall be reversed or affected by reason of such error.' (Sec. 9191, Rev. Codes 1921.) On appeal, prejudice is never presumed, and a judgment will not be reversed merely because the lower court erred; in order to work a reversal, it must affirmatively appear that the error has affected substantial

rights of defendant on the merits of the case. (*Montana Livestock [& Loan] Co.* v. *Stewart*, 58 Mont. 221, 190 Pac. 985; *Dockins* v. *Dockins*, 82 Mont. 218, 266 Pac. 398.) It does not affirmatively appear from the record that defendant was prejudiced or that substantial rights were affected by reason of the error.''

The findings of fact and conclusions of law of the district court are ordered changed to conform to this opinion. The judgment is modified in favor of the plaintiffs as herein decided, and, when so modified, the judgment will stand affirmed. The opinion heretofore promulgated before rehearing is withdrawn. The respondents will recover their costs on this appeal.

ASSOCIATE JUSTICES MORRIS, ANGSTMAN and ERICKSON, and HONORABLE BEN HARWOOD, District Judge, sitting in place of MR. CHIEF JUSTICE JOHNSON, disqualified, concur.

Cause taken to Supreme Court of the United States by writ of certiorari May 16, 1939. Petition for writ denied October 9, 1939.