The STATE OF MONTANA, STATE HIGHWAY COMMIS-
SION of the State of Montana, and HARRY L, BURNS,
L. V. SWANSON, OTIS S. WATERS, S. N. HALVORSON,
and ROY L. SORRELLS, as members of and constituting
the State Highway Commission of the State of Montana,
Plaintiffs and Respondents, v. BENNIE F. CHURCH-
WELL and CHARLOTTE V. CHURCHWELL, husband
and wife, and the Empire Savings and Loan Association
of Livingston, Montana, Defendants and Appellants.

No. 10403

Submitted December 8, 1964. Decided March 2, 1965. Petition for
rehearing granted May 5, 1965. Opinion of March 2, 1965 affirmed
July 19, 1965.

403 P.2d 751

Erickson & Richards, Leif Erickson (argued), Jerrold Richards, Helena (argued), for appellants.

Forrest H. Anderson, Daniel J. Sullivan, Helena (argued), Robert Tucker, Helena, for respondents.

MR. JUSTICE JOHN C. HARRISON delivered the Opinion of the Court.

This is an appeal from a judgment entered in a condemnation action brought by the State Highway Commission, based upon a jury verdict for appellant in the amount of $21,304.50.

The case was tried in the district court of the sixth judicial district in and for the County of Park, the Honorable George J. Allen presiding.

The land taken is located in Park County. The East-West controlled access Interstate highway crosses the Yellowstone River over a new bridge just south of the City of Livingston, Montana, and then proceeds westward for approximately 3,000 feet across rights-of-way purchased by the State from Bertha Stump, Mr. and Mrs. David Werner, and Dr. and Mrs. Verle Crissey. At this point it crosses over the primary highway which goes south to Yellowstone Park and then continues westward for approximately 1,800 feet until it reaches the property which is the subject of this appeal.

The land taken from the Churchwells in the instant action for interstate right-of-way purposes consists of 3.68 acres carved out of a larger tract of 10 acres purchased by the Churchwells in 1946 as an investment. Prior to the taking by the State, for highway purposes, the tract had measured approximately 700 feet from east to west and 600 feet from north to south. The Churchwells had planned to lay it out in streets and lots and had platted them, but the plat had not been filed. The 3.68 acres taken by the State runs in a west-northwesterly direction across the northern half of appellants' property and, in addition to the acreage actually taken, completely cuts off appellants' access to an area of .64 acres in the northeast corner.

After this action was commenced by the State, the commissioners appointed by the court awarded $26,314 for the taking and the damages to the remainder. The State appealed this award and a jury trial was had. The jury awarded $14,720 for the taking plus $6,584.50 for damages to the remainder, or a total of $21,304.50. From this verdict, and the judgment that followed, this appeal was taken by the defendants.

The first three specifications of error set out the proposition that the appellants' case was prejudiced by the introduction in evidence of certain files of the Montana State Highway Commission.

At the trial, defendants offered final agreements of sale for land in the vicinity of the land in question. Such agreements were referred to as green sheets. The plaintiff then offered the complete files of all negotiations that led up to the final agreements of sale for the land in the vicinity of the land in question. In offering the Werner file, Mr. Pool, Assistant Right of Way Engineer for the Highway Department, testified that the files all pertained to, and contained evidence, or contained material that was used to arrive at the compilation of the green sheet marked Defendants' Exhibit D. On voir dire, counsel for the defendants asked Mr. Pool the following questions:

"Q. And they [the files] contain a good deal of material that was put in them after it [the negotiation and signing of defendants' Exhibit D] do they not? A. After it?

"Q. Yes. A. Well, the file is open for years. If somebody writes in to us on a particular item we still use this particular file to file the item that was written in. It's a current file, it isn't a closed file.

"Q. So that we look through and we find several documents dated 1960-1961, do we not? A. Certainly, because those particular files are never closed. They are open for years."

Counsel for the defendants then objected on the grounds that it was incompetent and irrelevant and contained hearsay material, and in addition that there was material in it which was incompetent and irrelevant because it had been placed in the file subsequent to the purchase, and it clearly showed that it was placed in the file subsequent to the purchase. Also because the material was clearly self-serving, and was put in subsequent to the purchase.

The attorney for the State agreed to withdraw anything subsequent to the purchase from the file, and offer it with those

things withdrawn. With that understanding the defendants' objection was overruled and the plaintiffs' exhibit was admitted. The record does not show that such papers were removed from the file.

The same thing happened to the Crissey parcel file.

The next three specifications of error, 4, 5 and 6, concern the trial court's refusal to admit evidence of a sale of property occurring about one year subsequent to the service of the summons.

Counsel for the defendants asked the witness Working, an appraiser, whether he had checked any actual sales subsequent to the construction of the Interstate to see whether there had been any effect on the present sale price of lands. The plaintiff objected on the grounds that it had not been shown that the sale was prior to July 1, 1960, and the value of the property had to be established before July 1, 1960. After hearing argument the court sustained the objection. The defendants with offer of proof 1 offered to prove that property similar to that of the defendants' was sold in an arms length transaction after the construction of the Interstate had begun, for $1,800 per acre; that this is a lesser sum than the appraisal of the Highway Department which was $4,000 per acre; and that the sale at the decreased price proves that the State's contention that the Interstate did not depreciate such adjoining property was erroneous. The plaintiff objected to this offer of proof on the grounds that it was incompetent, that it had no relation to the time in this suit, and that it was immaterial to prove the value as of July 1, 1960. The objection to the offer of proof was sustained.

In rebuttal of the plaintiff's case, defendants called as a witness Francis Larango who was negotiating to buy certain property in the vicinity of the property in question. The negotiations were in their final stages. The plaintiff objected to this line of questioning on the grounds that it was incompetent and immaterial since it was a sale subsequent to the date of July

1, 1960. The court sustained the objection after hearing argument. The defendants' offer of proof 2 offered to prove by the witness Larango, "that he has purchased within the last two weeks the portion of the Sprunger property south of the Interstate at a price of $1,800 per acre and that sale and purchase was negotiated freely and in an arms length transaction between a willing seller and a willing buyer, that said purchase and sale was not a forced one; and that the parties to this sale were completely unconnected with the defendants in this case."

The plaintiff objected to the offer of proof on the grounds that it indicated that the evidence to be offered would be evidence of value after July 1, 1960, and therefore was incompetent. The court sustained the objection.

Specification of error number 7 concerns the alleged error by the plaintiff in including in the judgment language concerning the excess amount the State had paid into the court to obtain possession of the defendants' property so that construction of the highway could be commenced. The language indicates that the excess of the amount deposited by the Highway Department before it commenced construction, over what the jury awarded as just compensation, should be repaid to the Highway Department.

Specification of error 8 contends that the trial court erred in giving, over objection, as Instruction No. 5, court's offered Instruction No. 2, to the jury.

Concerning the first three specifications of error, the failure to remove from the negotiation files material subsequent to the final agreements of sale: while in the usual situation the State warrant would be the best evidence of the price paid for property, in highway cases the Commission when it purchases property does so through what is called a negotiation agreement. During the trial of this case appellants offered into evidence the Stump, Werner, and Crissey negotiation agreements to show what the State had paid for these voluntary acquisitions on the theory that the price paid voluntarily for other similar

pieces of land by the State could be interpreted as an admission of their value. The Stump negotiation agreement was admitted but when the Werner and Crissey negotiation agreements were offered a dispute arose over their admission and it was stipulated that the State's negotiation files could be offered after the removal of any material subsequent to purchase. In accord with this agreement the Crissey and Werner agreements were introduced into evidence by appellants. Thereafter, the State, over objection of appellant, introduced into evidence the Parcel Files, not the Negotiation Files as agreed upon, under the theory that having opened the door to allowing the Negotiation File that under section 93-401-11, R.C.M.1947, these files were admissible.

The Negotiation Files are but a minute part of the Parcel Files, and in all three instances, Stump, Werner and Crissey, the Negotiation File contained the negotiation agreement (deed) stapled to the inside of a legal sized folder, and very little else, while the Parcel File was a Pandora's Box.

The very nature of the controversial property questions involved in the Werner and Crissey acquisitions would necessitate careful regulation of the files in order to insure the appellants a fair trial. While this court has previously held that the court must disregard any error which does not affect the substantial rights of the parties, and no judgment shall be reversed or affected by reason of such error (Olson v. City of Butte, 86 Mont. 240, 250, 283 P. 222, 70 A.L.R. 1352; Conway v. Fabian, 108 Mont. 287, 89 P.2d 1022), such is not the fact in this case where a showing was made that "substantial rights" might well have been affected.

In the case of Conway v. Fabian, supra, this court at 323 of 108 Mont., p. 1037 of 89 P.2d said: "On appeal, prejudice is never presumed, and a judgment will not be reversed merely because the lower court erred; in order to work a reversal, it must affirmatively appear that the error has affected substantial rights of defendant on the merits of the case."

In our opinion, allowing the Parcel Files to go to the jury with all that they contained was error. Nor could the Parcel Files have been introduced, as the respondent contends, under the provisions of section 93-401-11, R.C.M.1947, which provides:

"When part of an act, declaration, conversation, or writing is given in evidence by one party, the whole on the same subject may be inquired into by the other; when a letter is read, the answer may be given; and when a detached act, declaration, conversation, or writing is given in evidence, any other act, declaration, conversation, or writing, which is necessary to make it understood, may also be given in evidence."

This section of our Code must be read along with sections 13-705 and 93-401-13, R.C.M.1947, which provide:

"When a contract is reduced to writing, the intention of the parties is to be ascertained from the writing alone, if possible; subject, however, to the other provisions of this chapter." (Section 13-705.)

"When the terms of an agreement have been reduced to writing by the parties, it is to be considered as containing all those terms, and therefore there can be between the parties and their representatives, or successors in interest, no evidence of the terms of the agreement other than the contents of the writing, except in the following cases:

"1. Where a mistake or imperfection of the writing is put in issue by the pleadings.

"2. Where the validity of the agreement is the fact in dispute.

"But this section does not exclude other evidence of the circumstances under which the agreement was made, or to which it relates, as defined in section 93-401-17, or to explain an extrinsic ambiguity, or to establish illegality or fraud. The term agreement includes deeds and wills, as well as contracts between parties." (Section 93-401-13.)

A careful study of the negotiation agreements in the Negotiation File shows that the agreement speaks for itself and that section 93-401-11, R.C.M.1947, has no application.

Concerning appellant's next three specifications of error, the court's refusal to allow testimony concerning the sale of next door neighbor's property after the date of the taking, we find no error.

The facts concerning the sale in question are as follows: Property adjacent to appellants' property was owned by the Sprungers who had lost approximately one-half of their tract of land for highway purposes; the land similar to that of appellants'; the Sprungers' lands taken for highway purposes was valued, as was that of appellants', at $4,000 per acre. Shortly before this case went to trial, and long after the date of the taking of appellants' property, the Sprungers sold their remaining property for $1,800 per acre. The appellants' position in trying to introduce this sale was for the purpose of showing damages to the remainder. Their position being that they were entitled to the difference between $1,800 and $4,000 as that being the damage to their remainder. The trial court refused to allow this testimony on the basis of section 93-9913, R.C.M.1947, which provides in part:

"For the purpose of assessing compensation the right thereto shall be deemed to have accrued *at the date* of service of the summons, and its actual value as *of that date* shall be the measure of compensation for all property to be actually taken, and the basis of depreciation in value of property not actually taken, but injuriously affected."

We hold that the trial court was correct in the ruling in view of the facts introduced at trial. Concerning the admission of evidence, either of value before or after the taking, the problem is one of comparability or similarity. In this case as hereinafter pointed out the facts do not make a case for similarity or comparability. See Vol. 85 A.L.R.2d pages 130 to 163.

The Sprunger property was an acreage sale as against

the appellants' allegation that theirs was platted land. Both the appellants and an appraiser, Mr. Working, testified as to damage to the remainder and a jury award was made based on this evidence. The Sprunger property had no residence while the appellants' property had a residence.

The next specification of error concerns itself with the inclusion in the judgment of language dealing with the refund to the State of any excess of monies on deposit as security that were over the jury's award. The language of the judgment concerning this point is as follows:

"That there is hereby awarded to the defendants herein the sum of *Twenty-One Thousand Three Hundred Four Dollars and Fifty Cents ($21,304.50)* as just compensation for the taking and condemning of said parcel of land; and deposit in excess thereof having been made with the Court and withdrawn by said defendants, Bennie F. Churchwell and Charlotte V. Churchwell, husband and wife, of Livingston, Montana, * * * the said excess thereof in the amount of *Four Thousand Nine Hundred and Nine dollars and Fifty cents ($4,909.50)* with interest from and after the 13th day of December 1960." (Emphasis supplied.)

The appellants point out in their brief that reference to the excess in the judgment is forbidden by an early Montana case, Great Northern Ry. Co. v. Benjamin, 51 Mont. 167, 149 P. 968. However, he failed to point out that the statute under which the Great Northern case was decided has been amended several times, the most recent being by Chapter 234, Laws of 1961, which became section 93-9920, R.C.M.1947, which provides in relevant part: "* * * and in all cases where the plaintiff deposits the amount of the assessment and continues in possession, or takes possession of the property, as herein provided, the defendant entitled thereto, if there be no dispute as to the ownership of the property, may at any time demand and receive *upon order of* the court, *all or any part of* the money so deposited, and shall not by such demand or receipt be barred or precluded from his right of appeal from such assessment,

but may, notwithstanding, take and prosecute his appeal from such assessment; provided, that if the amount of such assessment is finally reduced on appeal by either party, such defendant who has received *all or any part of* the amount deposited shall be liable to the plaintiff for any excess of the amount so received by him over the amount finally assessed, with legal interest on such excess from the time such defendant received the money deposited, and the same may be recovered by action; and, provided, further, that upon any appeal from assessment by the commissioners to a jury, the jury may find a less as well as an equal or greater amount than that assessed by the commissioners; *and provided, further, that the court shall not order the delivery to any defendant of more than seventy-five (75) per cent of the money deposited on his account except upon posting of bond by such defendant equal to the amount in excess of seventy-five (75) per cent, with sureties to be approved by the court; to repay to the plaintiff such amounts withdrawn as are in excess of his final award in the proceedings.*" (Italicized material represents or shows the amendments made by Chapter 234, Laws of 1961.)

A careful reading of the last amendatory section clearly shows that the district court can limit the draw-down to 75 per cent unless sureties are provided for the amount over 75 per cent. This provision is to protect the State where more money has been withdrawn than is awarded by the jury, and with all parties to the litigation before the court, even though an action is mentioned in the statute there could appear to be no reason under this amendment that should restrain or prohibit the district court in finally determining the issue.

Concerning appellants' last specification of error, the giving of court's Instruction 5 alleged to be erroneous in that it improperly placed the burden of proof as to damages on the appellants, such instruction reads:

"You are instructed that in this case the evidence shows that the plaintiffs offered to the defendants for the land to be

taken the sum of $14,720 and to pay as damages for the portion of defendants' property not sought to be condemned by reason of its severance from the portion sought to be condemned and the construction of the improvements in the manner proposed by the plaintiffs the sum of $2,534.50.

"You are instructed that the burden of proof to show a greater value than the above offered amounts is upon the defendants."

The defendants contend that the Commissioner's award of $26,314 stands as just compensation until the jury brings in a new verdict, and that any change from this figure must be proven by the plaintiffs who appealed from the Commissioner's award.

 This issue of the burden of proof as to damages being with the property owner and not the State has been settled as the law of Montana by the cases of State Highway Comm'n v. Peterson, 134 Mont. 52, 328 P.2d 617; State Highway Comm'n v. Bare, 141 Mont. 288, 377 P.2d 357. Therefore, we find this specification of error without merit.

By reason of the matters previously discussed, a new trial must be had and the cause is remanded to the district court for that purpose.

It is so ordered.

MR. CHIEF JUSTICE JAMES T. HARRISON and MR. JUSTICES ADAIR and DOYLE concur.

On Rehearing

PER CURIAM.

In this cause a rehearing was granted and the reargument had. The court has given careful consideration to all matters raised and argued, but are not convinced that any change should be made in our Opinion of March 2, 1965, and we reaffirm the same.

MR. JUSTICE CASTLES dissents.